United States District Court
Southern District of Texas
**ENTERED**
March 16, 2022
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| DI REED, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | |
| § | |
| JOI MARSHALL, TONYA HARRIS § | CIVIL ACTION NO. H-21-3942 |
| a/k/a TONYA KELLY, MYRACLE § | |
| HOLLOWAY, OLASHENI WILLIAMS § | |
| a/k/a SHANE WILLIAMS, and § | |
| YUNG FLY ENTERTAINMENT, INC., § | |
| § | |
| Defendants. § | |

## MEMORANDUM OPINION and ORDER

Plaintiff, Di Reed ("Plaintiff"), brought suit against Defendants Joi Marshall, Tonya Harris, Myracle Holloway, Olasheni Williams, and Yung Fly Entertainment, Inc. (collectively, "Defendants") on December 2, 2021, asserting federal claims for infringement of the federally-registered service mark "JADE" (the "Mark"), unfair competition and false designation of origin, dilution, and for related claims under the statutory and common laws of Texas.[1]  Defendants filed a counterclaim,[2] and Plaintiff

---

[1] Plaintiff's Original Complaint ("Complaint"), Docket Entry No. 1, p. 1 ¶ 1.  For identification purposes, all page numbers refer to the pagination imprinted at the top of the page by the court's Electronic Case Filing ("ECF") system.

[2] Defendant's Original Answer and Counterclaim ("Defendants' Answer and Counterclaim"), Docket Entry No. 22.

filed a motion to dismiss the counterclaim.³ For reasons stated below, Plaintiff's Motion to Dismiss will be **DENIED**.

## I. Factual Allegations and Procedural Background

Plaintiff, Marshall, and Harris are original members of the musical recording trio "Jade," and are co-owners of the Mark.⁴ The trio disbanded in February of 1995.⁵ In 2013 Marshall and Harris contacted Plaintiff about planning a reunion, but when Plaintiff proved to be unreliable, Marshall and Harris hired Holloway to take Plaintiff's place in the trio.⁶ Marshall and Harris contacted Plaintiff about a reunion again in February of 2021, but Plaintiff was "nonresponsive to these offers."⁷

Later in 2021 Marshall and Harris decided to collaborate with Williams for promotion of the Jade group to perform in three "90s Kickback Concerts," and they hired Holloway to perform at the concerts.⁸ Williams scheduled time with iHeart Radio to promote the concerts.⁹

---

³Plaintiff's Motion to Dismiss Pursuant to Rule 12(b)(6) ("Plaintiff's Motion to Dismiss"), Docket Entry No. 23.

⁴Complaint, Docket Entry No. 1, p. 3 ¶ 12; p. 4 ¶ 15.

⁵Defendants' Answer and Counterclaim, Docket Entry No. 22, p. 14 ¶ 8.

⁶Id. ¶¶ 10-11.

⁷Id. ¶ 12.

⁸Id. ¶¶ 13-14.

⁹Id. ¶ 15.

Plaintiff called Williams and stated that she wanted to perform with Jade.[10] Plaintiff sent cease and desist letters to Williams to stop Marshall and Harris's contractual involvement with Williams, which caused Williams to demand further assurances from Marshall and Harris that they would be able to fulfill their contractual obligations.[11] Plaintiff also called Marshall and Harris's agent, as well as Holloway and Williams, to convince them not to do business with Marshall and Harris again.[12] Marshall and Harris were forced to incur substantial costs and hire an intellectual property attorney to assure Williams and iHeart Radio that they were not breaking any laws by performing as Jade.[13] Defendants state that, as a result of Plaintiff's interference, Williams has not invited them to participate in more shows, and they have lost opportunities for future performances.[14]

On December 2, 2021, Plaintiff filed her Complaint, alleging that Marshall and Harris excluded her from Jade's reunion.[15] Plaintiff also alleges that Defendants wrongfully used the Mark to promote Marshall, Harris, and Holloway as the group "Jade," without

---

[10] Id.

[11] Id. at 15 ¶ 17.

[12] Id. ¶ 19.

[13] Id. ¶ 18.

[14] Id. ¶¶ 22-23.

[15] Complaint, Docket Entry No. 1, pp. 4-6 ¶¶ 18-28.

accounting to Plaintiff for "any portion of the profits they have generated from use of the JADE Mark."[16]

On January 3, 2022, Defendants Marshall and Harris brought a counterclaim for tortious interference with business relations, asserting that Plaintiff had intentionally disrupted their continuing relationship with Williams and caused them actual loss of prospective business opportunities.[17] On January 24, 2022, Plaintiff filed a motion to dismiss the counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6).[18] On February 14, 2022, Defendants filed a response[19] to which Plaintiff has not replied.

## II. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) permits a party to move that the court dismiss a complaint for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007)). The plaintiff's "[f]actual allegations must be enough to

---

[16]Id. at 6 ¶ 29.

[17]Defendant's Answer and Counterclaim, Docket Entry No. 22, p. 16 ¶¶ 25-26.

[18]Plaintiff's Motion to Dismiss, Docket Entry No. 23.

[19]Defendant's Response to Plaintiff's 12(b)(6) Motion to Dismiss, Docket Entry No. 24.

raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 127 S. Ct. at 1965 (internal quotation marks and citations omitted).

### III. Analysis

Plaintiff's Motion to Dismiss argues that Defendants' tortious interference claim should be dismissed because "Plaintiff's actions related to the instant lawsuit are protected from liability under the Noerr-Pennington doctrine[,]" and because Defendants' "conclusory and speculative pleadings do not satisfy the Rule 8 federal pleading standard as explained in Twombly."[20]

Defendants' Counterclaim meets the Twombly standard because it alleges sufficient factual matter, accepted as true, to state a plausible claim for tortious interference. A tortious interference claimant must show: (1) an existing contract subject to interference; (2) a willful and intentional act of interference with the contract; (3) the act proximately caused the plaintiff's injury; and (4) caused actual damages or loss. Prudential Insurance Co. of America v. Financial Review Services, Inc., 29 S.W.3d 74, 77 (Tex. 2000). Defendants claim that (1) they had a contract with Williams; (2) Plaintiff willfully and intentionally told Williams, promoters, and radio stations that Defendants had no rights to the Mark; (3) as a result of Plaintiff's communications,

---

[20]Plaintiff's Motion to Dismiss, Docket Entry No. 23, p. 2 ¶ 4.

Defendants lost their opportunity to participate in a tour that Williams had planned to involve them in; and (4) they suffered damages as a result. Defendants' Counterclaim thus survives the Rule 12(b)(6) standard. Defendants also allege a claim for tortious interference with prospective business relations because they contend that they have lost other opportunities to perform as a result of Plaintiff's interference.

The Noerr-Pennington doctrine protects First Amendment petitioning of the government from claims brought under federal and state laws, including common-law tortious interference. See Video International Production, Inc. v. Warner-Amex Cable Communications, Inc., 858 F.2d 1075, 1084 (5th Cir. 1988). Granting a Rule 12 motion based on Noerr-Pennington is appropriate only when its applicability "appears on the face of the pleadings[.]" Tricon Precast, Ltd. v. Easi Set Industries, Inc., 395 F. Supp. 3d 871, 883 (S.D. Tex. 2019) (quoting Miller v. BAC Home Loans Servicing, L.P., 726 F.3d 717, 726 (5th Cir. 2013)). Under the Noerr-Pennington doctrine's "sham" exception, the doctrine does not apply when the lawsuit is objectively baseless — that is, when no reasonable litigant could expect success on the merits — and the lawsuit is motivated only by a desire to use the governmental process as an anticompetitive weapon. Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc., 113 S. Ct. 1920, 1928 (1993). Because the applicability of the sham exception is a fact-intensive inquiry, "[c]ourts have often declined to rule

on the Noerr-Pennington doctrine on a motion to dismiss[.]" Tricon, 395 F. Supp. 3d at 884. The court in Wolf v. Cowgirl Tuff Co., No. 1:15-CV-1195 RP, 2016 WL 4597638 (W.D. Tex. Sept. 2, 2016) examined whether Noerr-Pennington precluded tortious interference liability for a litigant who sent a cease and desist letter. The court held that

> [t]he applicability of the sham exception to Defendant's affirmative defense of Noerr-Pennington immunity requires the Court to first assess the merits of the threatened litigation underlying the cease and desist letter and, if they are objectively lacking, to then assess Defendant's subjective motivation in sending the letter. These inquiries are typically only properly analyzed through a consideration of evidence outside of the pleadings[,] and as such, are not appropriately considered in the present Rule 12(b)(6) context.

Id. at *9 n.7 (internal quotation marks and citation omitted).

For the same reason, the court cannot analyze whether the Noerr-Pennington doctrine should apply at the pleading stage of this case — the facts have not been sufficiently developed. Accordingly, Plaintiff's Motion to Dismiss will be denied.

## IV. Order

For the reasons set forth above, Plaintiff's Motion to Dismiss Pursuant to Rule 12(b)(6) (Docket Entry No. 23) is **DENIED**.

**SIGNED** at Houston, Texas, on this the 16th day of March, 2022.

SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE