United States District Court
Southern District of Texas
**ENTERED**
October 20, 2023
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

DI REED,                               §
                                       §
        Plaintiff,                     §
                                       §
v.                                     §  CIVIL ACTION NO. H-21-3942
                                       §
JOI MARSHALL, TONYA HARRIS             §
P/K/A TONYA KELLY, and                 §
MYRACLE HOLLOWAY,                      §
                                       §
        Defendants.                    §
                                       §
                                       §
JOI MARSHALL and TONYA HARRIS,         §
                                       §
        Counterclaimants,              §
                                       §
v.                                     §
                                       §
DI REED,                               §
                                       §
        Counterclaim-Defendant.        §


### MEMORANDUM OPINION AND ORDER

Plaintiff, Di Reed ("Reed" or "Plaintiff"), brings this action against Defendants, Joi Marshall ("Marshall"), Tonya Harris p/k/a Tonya Kelly ("Harris"), and Myracle Holloway ("Holloway") for infringement of the federally-registered service mark "JADE" (the "Mark"), unfair competition in the forms of false designation of origin and false advertising, and dilution in violation of the Lanham Act, 15 U.S.C. § 1051 et seq., and for related claims based on the statutory and common law of Texas.[1]  Defendants deny

---

[1] Plaintiff's Original Complaint, Docket Entry No. 1. Plaintiff also asserted claims against Olshani Williams ("Williams") and Yung Fly Entertainment, Inc. ("Yung Fly"), but the claims asserted against them have been dismissed pursuant to the Agreed Dismissal and Permanent Injunction entered on October 11, 2022 (Docket Entry No. 42).

Plaintiff's allegations that they have violated either the Lanham Act or analogous state law, and Marshall and Harris assert state law counterclaims against Plaintiff for tortious interference with prospective business relations.[2]   Pending before the court is Defendants Joi Marshall, Tonya Harris, and Myracle Holloway's Motion for Summary Judgment ("Defendants' MSJ")(Docket Entry No. 47), which is supported by Defendants' Amended Memorandum in Support of Defendants' Motion for Summary Judgment ("Amended Memorandum in Support of Defendants' MSJ") (Docket Entry No. 49). Plaintiff has responded to Defendants' MSJ by filing Plaintiff's Objections and Response to Defendants' Motion for Summary Judgment on Lack of Subject Matter Jurisdiction ("Plaintiff's Response to Defendants' MSJ") (Docket Entry No. 51).   Defendants have replied by filing Defendants' Memorandum in Reply to Opposition to Motion for Summary Judgment ("Defendants' Reply") (Docket Entry No. 54), and Defendants' Second Amended Memorandum in Support of Defendants' Motion for Summary Judgment ("Defendants' Amended Rely")(Docket Entry No. 55).   For the reasons stated below, Defendants' MSJ will be granted as to the Lanham Act claims, and those claims will be dismissed with prejudice.   Because this action is based on federal question jurisdiction, the court will decline to exercise supplemental jurisdiction over the supplemental state law claims, and those claims will be dismissed without prejudice.

---

[2]Defendants' Original Answer and Counterclaim ("Defendants' Answer and Counterclaim"), Docket Entry No. 22, p. 16 ¶¶ 24-28. Page numbers for docket entries refer to the pagination inserted at the top of the page by the court's electronic filing system.

## I.  <u>Factual and Procedural Background</u>

**A.   Factual Background**[3]

In 1991 Plaintiff and Defendants Marshall and Harris formed the recording group Jade ("Jade Group"), which had successful single releases in 1993, 1994, and 1995.  In May of 1992 Plaintiff, Marshall, and Harris signed an exclusive recording agreement with Giant Records ("Giant Agreement"), a now-defunct record label.  The Giant Agreement contained specific provisions related to the Jade Group's operations including _inter alia_ that the service mark "JADE" would be held exclusively by the Jade Group, that at no time would more than one member of the Jade Group appear on a non-Jade Group recording, and that no additional members would be added to the Jade Group without Giant's consent.[4]

Beginning in April of 1993 the Jade Group members filed various applications with the United States Patent and Trademark Office ("USPTO").  On September 27, 1994, the USPTO registered the service mark "JADE" as United States Registration No. 1,856,017 in International Class 41 for "entertainment services, namely live

---

[3]Unless otherwise noted, the facts in this section are based upon the facts alleged in Plaintiff's Original Complaint, Docket Entry No. 1, pp. 3-9 ¶¶ 12-43, and in Plaintiff's Response to Defendants' MSJ, Docket Entry No. 51, pp. 14-24 ¶¶ 16-51.

[4]_See_ Exhibit 1 to Plaintiff's Response to Defendants' MSJ, Docket Entry No. 51-1, pp. 1, 47 ¶ 24(f) (Sideman Performances), 49-51 ¶ 26 (a)-(c) (Group Provisions).

performances by a musical group" ("'017 Registration").[5]  The '017 Registration was registered to "JADE (Partnership)" care of Lester Kaufman.[6]  Information retained by the USPTO shows that the '017 Registration was cancelled on October 6, 2001,[7] and that the "current owner(s) information" identified the owner as "JADE," a California "partnership," "composed of Joi Marshall, Deyelle Reed and Tonya Harris, all U.S. citizens."[8]  In 1995 Harris decided to stop performing with the Jade Group, and the members pursued individual careers.

In 2006, 2009, and 2013 members of the Jade Group corresponded about the possibility of performing together again, but ultimately they did not work or perform together.[9]

On October 8, 2013, Marshall and Harris posted a video to YouTube.com titled "Jade — Continuum," which included vintage footage of the Jade Group, including Plaintiff, from the 1990s, and

---

[5]See Exhibit 5 to Plaintiff's Response to Defendants' MSJ, Docket Entry No. 51-5

[6]Id.

[7]See Exhibit 6 to Plaintiff's Response to Defendants' MSJ, Docket Entry No. 51-6, p. 5.

[8]See id. at 6.

[9]See Exhibits 7-13 to Plaintiff's Response to Defendants' MSJ, Docket Entry Nos. 51-7 — 51-13.

promotional material for a new recording featuring Holloway under the name "JADE."[10]

Upon learning of the YouTube.com video, Plaintiff hired an attorney who sent Marshall a letter dated December 2, 2013, stating in pertinent part:

> On October 3, 2013, you and Ms. Tonya Harris were issued a request to cease and desist use of the name "JADE" in association with any project for which you and my client, Ms. Di Reed, have not established terms of agreement. As stated, my client shares equal ownership and rights to the JADE name and brand. Further, your continued unauthorized use of Ms. Reed's name and likeness to promote this project violates my client's Right of Publicity as prescribed in California Civil Code § 3344(a).
>
> . . .
>
> . . . [W]e hereby demand that, until this issue has been resolved, you immediately cease and desist use of the name "JADE' in conjunction with your current project. Further, we demand that you cease and desist use of any image of the original JADE, which features Ms. Reed's likeness, to promote your new, unauthorized project in a public forum, including any and all social media platforms.[11]

On May 29, 2014, Defendants appeared together at the Judge Mablean Ephraim Foundation red carpet where they identified themselves as "Jade."[12]

---

[10]See Exhibit 14 to Plaintiff's Response to Defendants' MSJ, Docket Entry No. 51-14.

[11]Exhibit 15 Plaintiff's Response to Defendants' MSJ, Docket Entry No. 51-15.

[12]Exhibit 16 to Plaintiff's Response to Defendants' MSJ, Docket Entry No. 51-16.

On November 26, 2018, in anticipation of a reunion tour, Plaintiff and Defendants Marshall and Harris filed an application to register the service mark "JADE" with the USPTO.  The application listed Reed, Marshall, and Harris as joint owners of the JADE Mark.  On June 25, 2019, the USPTO approved the application to register the JADE Mark, issuing Service Mark Registration No. 5,787,227 ("'227 Registration") for

> CLASS 41: Entertainment services in the nature of live musical performances; Entertainment services, namely, dance events by a recording artist; Entertainment, namely live performances by a musical band; Entertainment services by a musical artist and producer, namely musical composition for others and production of musical sound recordings.[13]

The first use and first use in commerce is identified as July 1, 1992, and the registrants are identified as Plaintiff, Marshall, and Harris.[14]

Defendants Marshall and Harris entered into a written agreement with Holloway dated June 1, 2021, pursuant to which Holloway would "create/contribute to live performances and promotions . . . as 'work for hire' for a time period of six (6) months starting July 1st, 2021 through December 31st, 2021."[15]

---

[13]"JADE" Trademark Registration, Exhibit A to Plaintiff's Original Complaint, Docket Entry No. 1-1, p. 1.

[14]Id.

[15]Exhibit 18 to Plaintiff's Response to Defendants' MSJ, Docket Entry No. 51-18, p. 1.

After learning that Marshall and Harris had hired Holloway to sing in her place at a "90's Kickback Concert" tour featuring the Jade Group, and that the JADE Mark was being used to promote the concert tour, Plaintiff hired an attorney to send cease and desist letters to Defendants dated October 6, 2021.[16]  On November 2, 2021, Plaintiff's attorney sent a follow-up e-mail correspondence to Marshall and Harris insisting that they stop using the JADE Mark to promote their concerts.[17]

Plaintiff alleges and Defendants admit that Defendants performed as Jade at a "90's Kickback Concert" held in three different locations: Milwaukee, Wisconsin, on November 20, 2021; Miami, Florida, on November 27, 2021; and Houston, Texas, on December 3, 2021.[18]  Plaintiff also alleges that the Defendants continue to perform under the JADE Mark without accounting to her for any portion of their profits.[19]  Marshall and Harris admit that they have not accounted to Plaintiff for any profits received.[20]

---

[16]Exhibit C to Plaintiff's Original Complaint, Docket Entry No. 1-3.

[17]Exhibit D to Plaintiff's Original Complaint, Docket Entry No. 1-4.

[18]Plaintiff's Original Complaint, Docket Entry No. 1, p. 6 ¶¶ 26-28; Defendants' Answer and Counterclaim, Docket Entry No. 22, p. 3 ¶¶ 26-28.  See also Flyers for the three concerts, Exhibit 19 to Plaintiff's Response to Defendants' MSJ, Docket Entry No. 51-19, pp. 1-2, and 9 (Miami), 3-5 (Milwaukee), 6-8, and 10 (Houston).

[19]Plaintiff's Original Complaint, Docket Entry No. 1, p. 6 ¶ 29.

[20]Defendants' Answer and Counterclaim, Docket Entry No. 22, p. 3 ¶ 29.

**B.    Procedural Background**

Plaintiff filed this action on December 2, 2021, against Defendants Marshall, Harris, Holloway, Williams, and Yung Fly.[21] Defendants filed their Original Answer and Counterclaim for tortious interference with prospective business relations on January 3, 2022.[22]

On January 24, 2022, Plaintiff filed a motion to dismiss Defendants' Counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6),[23] which the court denied by Memorandum Opinion and Order entered on March 16, 2022 (Docket Entry No. 25).

On April 29, 2022, Defendants filed a motion to dismiss Plaintiff's claim (Docket Entry No. 29), but later withdrew that motion pursuant to a request to file a motion for summary judgment (Docket Entry No. 33), which the court granted by Order entered on June 2, 2022 (Docket Entry No. 34).

On August 30, 2022, Magistrate Judge Christina A. Bryan conducted a Settlement Conference at which a partial settlement was reached with Defendants Williams and Yung Fly, and on October 11, 2022, the court entered an Agreed Dismissal and Permanent Injunction as to those defendants (Docket Entry No. 42).

---

[21]Plaintiff's Original Complaint, Docket Entry No. 1.

[22]Defendants' Answer and Counterclaim, Docket Entry No. 22.

[23]Plaintiff's Motion to Dismiss Pursuant to Rule 12(b)(6), Docket Entry No. 23.

## II. **Standard of Review**

Summary judgment is authorized if the movant establishes that there is no genuine dispute about any material fact, and the law entitles it to judgment. Fed. R. Civ. P. 56. Factual disputes are "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2511 (1986). The Supreme Court has interpreted the plain language of Rule 56 to mandate the entry of summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2552 (1986). A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (quoting Celotex, 106 S. Ct. at 2553-2554). If the moving party meets this burden, the nonmovant must go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, or other admissible evidence that facts exist over which there is a genuine issue for trial. Id. "For any matter on which the non-movant would bear the burden of proof at trial . . ., the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is

-9-

an issue of material fact warranting trial." <u>Transamerica Insurance</u> <u>Co. v. Avenell</u>, 66 F.3d 715, 718–19 (5th Cir. 1995) (per curiam). To prevent summary judgment, "the non-moving party must come forward with 'specific facts showing that there is a <u>genuine issue</u> <u>for trial</u>.'" <u>Matsushita Electric Industrial Co., Ltd. v. Zenith</u> <u>Radio Corp.</u>, 106 S. Ct. 1348, 1356 (1986) (quoting Fed. R. Civ. P. 56(e) (emphasis in the original)). "[T]he court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." <u>Reeves</u> <u>v. Sanderson Plumbing Products, Inc.</u>, 120 S. Ct. 2097, 2110 (2000). Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." <u>Little</u>, 37 F.3d at 1075.

## III. <u>Analysis</u>

Plaintiff alleges that

[t]his is an action for infringement of Plaintiff's famous federally-registered service mark "JADE" under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), for unfair competition and false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), for dilution under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), and for substantial and related claims of unfair competition, dilution, and misappropriation of Plaintiff's valuable right of publicity under the statutory and common laws of the State of Texas, arising from Defendants' unauthorized use of the mark "JADE" in connection with the marketing, advertising, promotion, offering for sale, and/or sale of Defendants' live

entertainment services and unauthorized use of Plaintiff's celebrity identity therewith.[24]

"Plaintiff seeks injunctive and monetary relief."[25] Plaintiff alleges that "[t]his court has jurisdiction over this action pursuant to 15 U.S.C. § 1121, 28 U.S.C. §§ 1331, and 1338(a) and (b), and pursuant to the principles of supplemental jurisdiction under 28 U.S.C. § 1367."[26]

Defendants seek summary judgment on all of the federal law claims asserted in this action arguing that

> Plaintiff's claims do not properly arise from the Lanham Act because Marshall and Harris are co-owners of the trademark and there is no Operating Agreement prohibiting their use of the Jade trademark, including hiring Holloway to perform with them . . .[27]

Asserting that they are entitled to judgment as a matter of law, Defendants move the court to dismiss Plaintiff's federal law claims with prejudice, and to dismiss Plaintiff's state law claims without prejudice for lack of supplemental jurisdiction.[28] Citing Derminer v. Kramer, 406 F. Supp. 2d 756, 758 (E.D. Mich. 2005), and Piccari v. GTLO Productions, LLC, 115 F. Supp. 3d 509, 513-17 (E.D. Penn. 2015), for holding that trademark owners cannot bring claims for

---

[24]Plaintiff's Original Complaint, Docket Entry No. 1, p. 1 ¶ 1.

[25]Id. ¶ 2.

[26]Id. at 2 ¶ 3.

[27]Defendants' MSJ, Docket Entry No. 47, p. 1.  See also Defendants' Reply, Docket Entry No. 54, p. 7 (arguing that co-owners of a trademark cannot sue one another for infringement or for unfair competition under the Lanham Act or state law).

[28]Defendants' MSJ, Docket Entry No. 47, pp. 1-2.

Lanham Act violations against co-owners of a trademark,[29] and that such claims should be dismissed for lack of subject matter jurisdiction,[30] Defendants argue that "Counts 1 through 6 of the Original Complaint should be dismissed because Plaintiff has failed to plead a claim arising under the Lanham Act."[31]

Asserting that "Defendants' Motion does not challenge [her] Complaint on the merits, but rather the Court's subject matter jurisdiction conditioned on [her] Lanham Act claims,"[32] Plaintiff responds that the Court has subject matter jurisdiction over the Lanham Act claims asserted against all three Defendants and that the court should retain supplemental jurisdiction over her state law claims. Asserting that Defendants' MSJ "is, in reality, a mis-styled Rule 12(b)(1) Motion to challenge this Court's subject-matter jurisdiction,"[33] Plaintiff argues that Defendants' MSJ should be denied because her "Complaint properly asserts a federal question against all defendants under the Lanham Act, and [that because her] state law claims derive from the same case and controversy, the Court should retain subject matter and supplemental jurisdiction over Plaintiff's Complaint."[34]

---

[29]Amended Memorandum in Support of Defendants' MSJ, Docket Entry No. 49, p. 6 ¶ 39.

[30]<u>Id.</u> at 7 ¶ 41.

[31]<u>Id.</u> ¶ 44.

[32]Plaintiff's Response to Defendants' MSJ, Docket Entry No. 51, p. 3.

[33]<u>Id.</u> at 10 ¶ 6.

[34]<u>Id.</u> at 14 ¶ 15.

**A.    The Court Has Subject Matter Jurisdiction**

Plaintiff's characterization of Defendants' MSJ as "a mis-styled Rule 12(b)(1) Motion" is misplaced because despite Defendants' reliance on cases in which the court dismissed similar claims for lack of jurisdiction, i.e., Derminer and Picarri, Defendants do not challenge the court's subject matter jurisdiction but, instead, challenge Plaintiff's ability to sue under the Lanham Act.   Rule 12(b)(1) governs challenges to the court's subject matter jurisdiction.   "Subject matter jurisdiction properly comprehended . . . refers to a tribunal's 'power to hear a case,' a matter that 'can never be forfeited or waived.'"   Union Pacific Railroad Co. v. Brotherhood of Locomotive Engineers and Trainmen General Committee of Adjustment, Central Region, 130 S. Ct. 584, 596 (2009) (quoting United States v. Cotton, 122 S. Ct. 1781, 1785 (2002)).   "[D]ismissal on jurisdictional grounds alone is not on the merits."   Hitt v. City of Pasadena, 561 F.2d 606, 608 (5th Cir. 1977) (per curiam).

The court has subject matter jurisdiction over Plaintiff's claims for trademark infringement and unfair competition under the Lanham Act, 15 U.S.C. § 1051, et seq., because these claims arise under the laws of the United States.   "Federal courts have jurisdiction over a claim brought under a federal statute unless the claim 'clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction' or 'is wholly insubstantial and

frivolous.'" WickFire, L.L.C. v. Laura Woodruff, 989 F.3d 343, 349 (5th Cir. 2021) (quoting Bell v. Hood, 66 S. Ct. 773, 776 (1946)). Defendants do not argue, and the court does not find, that Plaintiff's Lanham Act claims appear to be immaterial and made solely for the purpose of obtaining jurisdiction, or that they are insubstantial and frivolous.  The court therefore concludes that it has subject matter jurisdiction over Plaintiff's Lanham Act claims and, accordingly, supplemental jurisdiction over the parties' state law claims.  See id. at 252 (citing 28 U.S.C. § 1367(a)).

In Lexmark International, Inc. v. Static Control Components, Inc., 134 S. Ct. 1377, 1387-88 & n. 4 (2014), the Supreme Court described the question of whether a plaintiff is able to sue under the Lanham Act as a merits, not a jurisdictional, question. Acknowledging that courts have on occasion treated this issue as "effectively jurisdictional," the Court explained that "the absence of a valid (as opposed to an arguable) cause of action does not implicate subject-matter jurisdiction." 134 S. Ct. at 1387 n. 4. Whether Plaintiff has a right to sue under the Lanham Act asks (1) whether Plaintiff comes within "the zone of interest" implicated by the statute; and, (2) whether the Plaintiff's injuries were proximately caused by Defendants' violation of the statute.  Id. at 1388-91.

Although challenges to a party's ability to sue under a particular statute are often addressed under Rule 12(b)(6) for

failure to state a claim for which relief may be granted, <u>see</u> <u>Harold H. Huggins Realty, Inc. v. FNC, Inc.</u>, 634 F.3d 787, 795 n. 2 (5th Cir. 2011) (distinguishing dismissals for lack of constitutional standing from dismissals for lack of statutory standing), Plaintiff has not cited and the court has not found any authority that precludes consideration of such challenges under Rule 56 on a motion for summary judgment. See <u>Obesity Research</u> <u>Institute, LLC v. Fiber Research International, LLC</u>, 310 F. Supp. 3d 1089, 1115-16 (S.D. Calif. 2018) (after finding counterclaims for Lanham Act violations sufficient to survive a Rule 12(b)(6) motion for lack of statutory standing, the court revisited the issue on a motion for summary judgment). Whether Plaintiff's Lanham Act claims fall within the legislatively conferred causes of action that she invokes, and whether Plaintiff has raised genuine issues of material fact for trial, require the court to assesses each claim individually using traditional tools of statutory interpretation. See <u>Lexmark</u>, 134 S. Ct. at 1387.


**B.   Plaintiff's Objections to Defendants' Evidence**

Plaintiff objects to Defendants' Exhibits 2 and 4 arguing that they are unauthenticated under Rule 901 and hearsay without exception under Rul 801. Plaintiff also objects to Exhibit 4 as improper expert testimony under Rule 701.[35]  Defendants' Exhibit 2

---

[35]<u>Id.</u> at 9 ¶¶ 1-2.

is a screen shot of Plaintiff on a YouTube video identifying her as Jade without Marshall or Harris, and Exhibit 4 is a letter from an intellectual property attorney hired by Marshall and Harris to persuade third parties that the JADE Mark could be used without Plaintiff.[36]   In considering a motion for summary judgment, "evidence need not be authenticated or otherwise presented in an admissible form[,]" so long as the evidence is capable of being presented in an admissible form at trial.  Maurer v. Independence Town, 870 F.3d 380, 384 (5th Cir. 2017) (discussing how 2010 amendments to the Federal Rules of Civil Procedure "allow[ ] the court to consider the evidence that would likely be admitted at trial . . . without imposing on parties the time and expense it takes to authenticate everything").  This rule applies to hearsay. See Arora v. Starwood Hotels & Resorts Worldwide, Inc., 294 F. App'x 159, 161 n. 9 (5th Cir. 2008) (per curiam).  Evidence is relevant if it has "any tendency" to make a fact more or less probable and that fact is "of consequence in determining the action."  Fed. R. Evid. 401.  The evidence to which Plaintiff objects could likely be presented in an admissible form at trial, and is relevant at this stage.  Moreover, for the reasons stated below, the court is able to rule on the Defendants' MSJ without relying on the evidence to which Plaintiff objects.  Accordingly, Plaintiff's objections are therefore **OVERRULED**.

---

[36]See Exhibits B and D to Amended Memorandum in Support of Defendants' MSJ, Docket Entry Nos. 49-2 and 49-4 (Defendants' Exhibits are labeled alphabetically, not numerically).

C.    **Federal Law Claims**

The only federal law claims in this action are claims asserted under the Lanham Act, 15 U.S.C. § 1051 et seq., which the Supreme Court has described as "the core federal trademark statute." Jack Daniel's Properties, Inc. v. VIP Products LLC, 143 S. Ct. 1578, 1583 (2023).  The Lanham Act states that

> [t]he intent of this chapter is to regulate commerce within the control of Congress by making actionable the deceptive and misleading use of marks in such commerce; to protect registered marks used in such commerce from interference by State, or territorial legislation; to protect persons engaged in such commerce against unfair competition; to prevent fraud and deception in such commerce by the use of reproductions, copies, counterfeits, or colorable imitations of registered marks; and to provide rights and remedies stipulated by treaties and conventions respecting trademarks, trade names, and unfair competition entered into between the United States and foreign nations.

15 U.S.C. § 1127.

The Lanham Act defines a service mark as "any word, name, symbol, or device, or any combination thereof" that a person uses "to identify and distinguish the services of one person, . . . from the services of others and to indicate the source of the services, even if that source is unknown."  15 U.S.C. § 1127.  Because "[s]ervice mark infringement and trademark infringement are governed by identical standards," Boston Professional Hockey Association, Inc. v. Dallas Cap & Emblem Manufacturing, Inc., 510 F.2d 1004, 1009 (5th Cir. 1975), courts use the terms interchangeably.  Id.

-17-

>To help protect marks, the Lanham Act sets up a voluntary
>registration system. . . Consistent with trademark law's
>basic purpose, the lead criterion for registration is
>that the mark "in fact serve as a 'trademark' to identify
>and distinguish goods [or services]." . . . If it does,
>and the statute's other criteria also are met, the
>registering trademark owner receives certain benefits,
>useful in infringement litigation.

Jack Daniel's Properties, 143 S. Ct. at 1583-84 (citing Iancu v.
Brunetti, 139 S. Ct. 2294, 2297 (2019) (noting that "registration
constitutes 'prima facie evidence' of the mark's validity").

The Lanham Act creates federal causes of action for trademark
infringement, which "is part of a broader law of unfair
competition." Moseley v. V Secret Catalogue, Inc., 123 S. Ct.
1115, 1122 (2003). In the typical case the owner of a mark sues
someone using a mark that closely resembles its own, and the court
must decide whether the defendant's use is "likely to cause
confusion, or to cause mistake, or to deceive." 15 U.S.C.
§§ 1114(1)(A), 1125(a)(1)(A). The most common type of confusion is
confusion "about the source of a product or service." Jack
Daniel's, 143 S. Ct. at 1584 (quoting Moseley, 123 S. Ct. at 1122).
The Lanham Act also creates a cause of action for the dilution of
famous marks, which can succeed without likelihood of confusion.
15 U.S.C. § 1125(c). See also Moseley, 123 S. Ct. at 1123. A
famous mark is one "widely recognized by the general consuming
public of the United States as a designation of source of the goods
or services of the mark's owner." § 1125(c)(2)(A). Dilution can
occur by blurring or by tarnishment. 15 U.S.C. § 1125(c)(1).

-18-

1.  <u>Plaintiff's Claim for Infringement Against Holloway</u>

Plaintiff asserts an infringement claim under § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1) against Holloway, but not against Marshall and Harris.  Plaintiff alleges that

> Holloway's unauthorized use in commerce of the Infringing Mark . . . is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendants' services, and is likely to cause consumers to believe, contrary to fact, that Defendants' services are sold, authorized, endorsed, or sponsored by Plaintiff, or that Defendants are in some way affiliated with or sponsored by Plaintiff.  Defendants' conduct therefore constitutes service mark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).[37]

Plaintiff seeks a permanent injunction that enjoins Holloway from infringing her rights in the JADE Mark, and from using the JADE Mark in relation to services for which Plaintiff is not involved as a source of the services promoted.[38]

Defendants argue that they are entitled to judgment as a matter of law on Plaintiff's infringement claim against Holloway because Marshall and Harris, who co-own the Mark with Plaintiff, hired Holloway to perform with them and therefore consented to her performance with them; because Holloway only used the Mark when performing with Marshall and Harris; and because no Operating

---

[37]Plaintiff's Original Complaint, Docket Entry No. 1, p. 9 ¶ 45.  Despite Plaintiff's use of the term "Defendants" in this claim, Plaintiff acknowledges that she has sued only Holloway for infringement under § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1). <u>See</u> Plaintiff's Response to Defendants' MSJ, Docket Entry No. 51, p. 25 ¶ 53 ("Plaintiff did not sue Marshall or Harris under [§] 32(1).").

[38]Plaintiff's Original Complaint, Docket Entry No. 1, pp. 20-21 ¶ 2 and p. 23 ¶ 5.

Agreement prohibits Marshall and Harris from permitting Holloway to perform with them under the Mark.[39]   Plaintiff does not address Defendants' argument that Holloway cannot be held liable for trademark infringement because two of the mark's three co-owners hired her to perform with them under the Mark, thereby consenting to her use of the Mark. Instead, Plaintiff merely asserts that Defendants present no argument or authority for why § 32(1) of the Lanham Act is unavailable to her vis-à-vis Holloway.[40]   Nor does Plaintiff address Defendant's argument that no Operating Agreement prohibits them from permitting Holloway to perform with them under Mark.  Although Plaintiff cites the Giant Agreement, an exclusive recording agreement with the now-defunct Giant Records executed in May of 1992 for a term of up to 12 years, for containing provisions related to the Jade Group's operations,[41] Plaintiff neither argues nor makes any showing that the Giant Agreement, limits the parties' ownership rights to the Mark.

---

[39]Amended Memorandum in Support of Defendants' MSJ, Docket Entry No. 49, pp. 2 ¶ 9, and 12-13 ¶¶ 78-83.  See also Defendants' Reply, Docket Entry No. 54, p. 19 ¶¶ 59-60, and Defendants' Amended Reply, Docket Entry No. 55, p. 14 (arguing that "[b]ecause Holloway is a permissive user of the Jade trademark and permission was from the registrants Harris and Marshall, Holloway cannot be liable for trademark infringement under this provision of the Lanham Act.").

[40]Plaintiff's Response to Defendants' MSJ, Docket Entry No. 51, p. 26.

[41]See Exhibit 1 to Plaintiff's Response to Defendants' MSJ, Docket Entry No. 51-1, pp. 1, 47 ¶ 24(f) (Sideman Performances), 49-51 ¶ 26 (a)-(c) (Group Provisions).

(a)   Applicable Law

Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1) protects registered marks.  It provides that

> [a]ny person who shall, **without the consent of the registrant** — (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . . shall be liable in a civil action by the registrant for the remedies hereinafter provided.

15 U.S.C. § 1114(1)(a) (emphasis added).  Thus, § 32(1) "forbids the unauthorized use of [a] registered mark in foreign and interstate commerce." Armstrong Paint & Varnish Works v. Nu-Enamel Corp., 59 S. Ct. 191, 195 (1938).  A cause of action for infringement exists where a person

> uses (1) any reproduction, counterfeit, copy[,] or colorable imitation of a mark; **(2) without the registrant's consent**; (3) in commerce; (4) in connection with the sale, offering for sale, distribution[,] or advertising of any goods [or services]; (5) where such use is likely to cause confusion, or to cause mistake or to deceive.

American Rice, Inc. v. Producers Rice Mill, Inc., 518 F.3d 321, 329 (5th Cir. 2008) (quoting Boston Professional Hockey Association, 510 F.2d at 1009-10) (emphasis added)).


(b)   Application of the Law to the Undisputed Facts

The undisputed evidence shows that Plaintiff and Defendants Marshall and Harris are co-registrants and co-owners of the JADE

-21-

Mark,[42] and that Holloway has performed under the Mark with consent from Marshall and Harris, but without consent from Plaintiff.[43] Plaintiff has neither alleged nor cited any evidence showing that Holloway has used the Mark to perform by herself without consent from Marshall and Harris.[44]   Defendants argue that "[b]ecause

---

[42]Although registration of a mark is only prima facie evidence of the registrant's right to use the mark, see 15 U.S.C. § 1115(a) (stating that registration equals prima facie evidence of right to use), mark ownership and protection is established through use, not registration.  See Board of Supervisors for Louisiana State University Agricultural & Mechanical College v. Smack Apparel Co., 550 F.3d 465, 475 (5th Cir. 2008), cert. denied, 129 S. Ct. 2759 (2009).  The parties agree that they are co-owners as well as co-registrants of the Jade Mark.  See Plaintiff's Original Complaint, Docket Entry No. 1, p. 4 ¶ 15 ("Beginning in 2019, Plaintiff and Defendants Marshall and Harris began to plan a reunion tour.  In connection with the reunion tour the three members filed, at Plaintiff's insistence, a trademark application to register their famous service mark "JADE" with the United States Patent and Trademark Office.  On November 26, 2018, they filed an application with each of Plaintiff and Defendants Marshall and Harris listed as joint owners of the mark."); and p. 19 ¶ 120 ("Defendants Marshall and Harris are joint-owners of the JADE Mark . . ."). See also Defendants' Original Answer and Counterclaim, Docket Entry No. 22, p. 3 ¶ 15 ("In response to [¶] 15, of the Original Complaint, Defendants Marshall and Harris deny that the talks of a reunion tour began in 2019.  The remainder of the allegations in [¶] 15 are admitted."); p. 10 ¶ 120 ("In response to ¶ 120 of the Original Complaint, Defendants admit that Defendants Marshall and Harris are joint owners of the Jade mark.").

[43]See June 1, 2021, Work-for-Hire Agreement that Marshall and Harris entered with Holloway pursuant to which Holloway would "create/contribute to live performance and promotions" between June 1 and December 31, 2021, Exhibit 18 to Plaintiff's Response to Defendants' MSJ, Docket Entry No. 51-18, p. 1.

[44]Plaintiff's Original Complaint, Docket Entry No. 1, p. 7 ¶ 30 ("Upon information and belief, Defendant Holloway is using the JADE Mark as a source identifier of her own entertainment and live performance services. However, Defendant Holloway has not sought or

(continued...)

Holloway is a permissive user of the Jade []mark and permission was from the registrants Harris and Marshall, Holloway cannot be liable for trademark infringement under [§ 32(1)] of the Lanham Act."[45] As a co-registrant of the mark, Plaintiff clearly comes within the zone of interest implicated by the statute, but missing from Plaintiff's response to Defendant's MSJ is any evidence showing that the injuries of which she complains were proximately caused by Defendants' violation of the statute.

Plaintiff's claim for infringement against Holloway is premised on the contention that Holloway cannot perform under the mark without her consent as a co-owner of the Mark.  But missing from Plaintiff's briefing is either argument or cite to any authority showing that by performing under the Mark together with Marshall and Harris, Holloway has infringed Plaintiff's rights to the Mark.  As one court has recently recognized,

> [f]ew trademark disputes involve co-owners because co-ownership is disfavored in trademark law: "Legal recognition of more than one owner of a single mark is contrary to the basic definition of a mark as identifying and distinguishing a single seller's goods and services."

---

[44](...continued)
received any authorization from Plaintiff to do so.").

[45] Defendants' Reply, Docket Entry No. 54, p. 19 ¶ 60.  See also Defendants' Amended Reply, Docket Entry No. 55, p. 14 ("Plaintiff's Lanham Act claims against Defendant Holloway fail because she received permission from two owners of the JADE mark to use it and only used the mark when performing with the two owners.").

<u>East West Tea Co., LLC v. Puri</u>, No. 3:11-CV-01358-HZ, 2022 WL 900539, at *6 (D. Or. March 28, 2022) (quoting 2 J.T. McCarthy, McCarthy on Trademarks & Unfair Competition ("McCarthy") § 16:40 (5th ed.)). Nevertheless, "[w]hile joint ownership of trademarks is disfavored because it could lead to consumer confusion, it is not prohibited under federal trademark law." <u>Id.</u>

Courts asked to consider the rights of co-owners in trademark cases have uniformly held that federal claims for infringement cannot be maintained against co-owners because "[c]o-owners of trademarks hold 'equal and unfettered rights of use.'" <u>Lightfood v. DeBruine</u>, No. CV-20-00666-PHX-DJH, 2023 WL 2665732, at * 9 (D. Ariz. March 28, 2023) (quoting <u>Piccari</u>, 115 F. Supp. 3d at 516)). <u>See also</u> <u>Deriminer</u>, 406 F. Supp. 2d at 759 ("An owner does not infringe upon his co-owner's rights in a trademark by exercising his own right of use."); <u>Derminer v. Kramer</u>, No. 04-CV-74942-DT, 2005 WL 8154857, *7 (E.D. Mich. July 14, 2005) ("[W]here a mark is held by multiple owners each owner would have an equal right to use the mark such that a joint owner cannot be held as an infringer against any other joint owner."); <u>Puri v. Yogi Bhajan Administrative Trust</u>, No. CV 11-9503 FMO (SHx), 2015 WL 12684464, at *11 (C.D. Cal. October 30, 2015) ("a trademark co-owner does not infringe upon his co-owners rights by exercising his own right of use."). The <u>Piccari</u> and <u>Derminer</u> cases cited by Defendants are particularly informative.

The plaintiffs in <u>Piccari</u> were two members of a musical group who sought to recover their share of profits from live performances conducted after the other members ousted them from the group.  115 F. Supp. 3d at 511.  The plaintiffs alleged, and the court assumed, that the plaintiffs and defendants co-owned the group's registered trademark name, "Get the Led Out," because the trademark registration identified the "registrant" as four individuals, one of whom was a plaintiff.  <u>Id.</u> at 513.  The defendants argued that the plaintiffs' joint ownership of the trademarked name prohibited the plaintiffs from stating a Lanham Act infringement claim against them.  <u>Id.</u>  Acknowledging that the language of § 1114(1) "with its reference only to the registrant, provides little guidance as to whether an owner may bring a cause of action against a co-owner for trademark infringement," <u>id.</u> at 514, and reasoning that "the Supreme Court has observed that '[r]egistration of a mark under § 2 of the Lanham Act, 15 U.S.C. § 1052, enables the <u>owner</u> to sue an <u>infringer</u> under § 32, 15 U.S.C. § 1114,'" <u>id.</u> (quoting <u>Wal-Mart Stores, Inc. v. Samara Brothers, Inc.</u>, 120 S. Ct. 1339, 1342 (2000), and that the purpose of the Lanham Act is to protect both the public and the owners of marks from imitators seeking to capitalize on the owner's goodwill, <u>id.</u> (citing 15 U.S.C. § 1127), the court concluded that "[a] co-owner with an equal right to use the trademark cannot be an imitator at whom this statute is directed." <u>id.</u> at 514-15.  The court explained that

> [b]ecause co-owners are naturally associated with the
> same source, in this instance the band "Get the Led Out,"
> use by a co-owner cannot create confusion as to the
> source among consumers.  The purpose of the Lanham Act is
> not furthered by permitting co-owners to lodge trademark
> infringement claims against one another premised upon a
> co-owners' use of the mark.

Id. at 515.  Citing Derminer, 406 F. Supp.3d at 756, the court held

that

> [t]his dispute, like that in Derminer, is premised solely
> upon the allegations that some owners, i.e. Plaintiffs,
> were prohibited from enjoying the profits earned through
> the use of the trademark.  This is not a case in which
> the Plaintiffs are seeking to protect a trademark from
> unscrupulous use by pirates or cheats or asking the
> [c]ourt to enjoin the unauthorized use of their trademark
> by a former licensee. [The plaintiffs' claims] are
> properly understood as actions for an accounting arising
> under state law. . . They do not arise under the Lanham
> Act.

Piccari, 115 F. Supp. 3d at 516.

Like Piccari, Derminer involved a dispute over use of the

registered trademark name of a musical group, "MC5," which was

jointly owned by the group's individual members.  The plaintiffs

acquired ownership interest in the MC5 mark following the death of

one of the group's members.  Following the release of a number of

the group's recordings, the plaintiffs filed suit seeking

injunctive and monetary relief under both the Lanham Act and the

Copyright Act alleging that the recordings were released without

their permission and without accounting for revenues.  2005 WL

8154857, at *1-*2.  The plaintiffs sought a preliminary injunction,

which defendants opposed by arguing, inter alia, that as joint

-26-

owners of the MC5 mark, they were entitled to exploit the MC5 marks, and that the plaintiffs had no legal basis to prevent them from continuing to use the marks.  The case was referred to a magistrate judge who observed that "[t]his case requires the [c]ourt to determine whether a joint owner's use of a trademark can constitute infringement or dilution actionable by his co-owners." Id. at *6.  Relying on principles of copyright and patent law, the court analyzed the case under two different approaches: a traditional approach, under which trademarks are treated as divisible assets; and a modern approach, under which trademarks are treated as indivisible assets.  Id. at *6-*10.

Citing Steem-Electric Corp. v. Herzfeld-Phillipson Co., 118 F.2d 122, 128 (7th Cir. 1940), for holding that a joint inventor of a patent cannot be held liable for unfair competition or infringement by a co-inventor, and Cortner v. Israel, 732 F.2d 267, 271-72 (2d Cir. 1984), for holding that neither a joint owner of a copyright nor employees hired or commissioned by a joint owner to create a derivative work could be held liable for infringement by a co-creator, the court observed that "the traditional approach dictates that where a mark is held by multiple owners each owner would have an equal right to use the mark such that a joint owner cannot be held as an infringer against any other joint owner." Derminer, 2005 WL 8154857, at * 7.  Applying the traditional approach, the court concluded that, "both [p]laintiffs and

-27-

[d]efendants are free to use the MC5 trademarks without infringing the rights of the others." Id.

Plaintiff does not dispute that one co-owner of a mark is unable to maintain an infringement action against another co-owner of the same mark, and apparently for this reason has asserted a claim for infringement against Holloway but not against Marshall or Harris.  Neither party has cited any trademark case in which the court was asked to consider the specific question at issue here, i.e., whether one co-owner can sue a party hired by another co-owner to perform under the jointly owned mark?  However, in an analogous case involving a long-running dispute over the right to use trademarks jointly owned by two parties, one of whom had licensed its right to use the marks to a third party, the court held that "a valid licensee of one co-owner of a trademark cannot be liable to another co-owner for infringement." East West Tea Co., 2022 WL 900539, at * 6.  The court reasoned that if a co-owner of a trademark does not infringe upon the rights of another co-owner by exercising his own right to license the mark to a third party, then the licensee cannot be an infringer. Id.  In support of its holding the court cited Piantadosi v. Loew's, Inc., 137 F.2d 534 (9th Cir. 1943), where the Ninth Circuit reached a similar conclusion in a copyright case.  In Piantadosi the court held that a third party licensed to use a copyrighted work by one co-owner incurs no liability for infringing the copyright to other co-owners

who gave no consent.  Id. at 537.  The Fifth Circuit reached a similar conclusion in Batiste v. Island Records, Inc., 179 F.3d 217, 223-224 (5th Cir. 1999), cert. denied, 120 S. Ct. 792 (2000), where the court held that someone who has been granted rights by a co-owner of a copyright has a valid defense to an infringement action brought by another co-owner.  See also Cortner, 732 F.2d at 271-72 (derivative composition does not infringe if created with consent of co-owner of underlying work).

The court finds these authorities persuasive, and absent any argument or authority from Plaintiff to the contrary, concludes that Marshall and Harris were within their rights as co-owners to hire Holloway to perform with them and therefore consent to her performance under the Mark.  Because Plaintiff has neither alleged nor cited any evidence showing that Holloway performed under the Mark without Marshall and Harris, the court concludes that Holloway cannot be held liable to Plaintiff for infringement.  Because the undisputed evidence establishes that Holloway's use of the Jade Mark was authorized by the Mark's co-registrants and co-owners, Marshall and Harris, the court concludes that Defendants are entitled to judgment as a matter of law on the claim for infringement that Plaintiff has asserted against Holloway under § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).  Accordingly, Defendants' MSJ will be granted as to the infringement claim asserted against Holloway.

2.   Plaintiff's   Claims   for   Contributory   and   Vicarious
     Infringement Against Marshall and Harris

Plaintiff asserts claims against Marshall and Harris for
contributory infringement under § 32(1) of the Lanham Act, 15
U.S.C. § 1114(1), and for vicarious infringement. Regarding
contributory infringement Plaintiff alleges that

> [w]ith full knowledge of Plaintiff's rights in the JADE
> Mark, and after being warned repeatedly that Defendants
> Marshall and Harris's conduct and/or the conduct of third
> parties with whom Defendants have associated constitute
> infringement, Defendants have participated in or
> otherwise knowingly contributed to the use, reproduction,
> and/or imitation of the federally registered JADE Mark by
> third parties in connection with the sale, offering for
> sale, distribution, or advertising of services in
> interstate commerce on their behalf. Specifically,
> Defendants Marshall and Harris performed in concerts and
> appeared in advertising knowing they were being promoted
> in ways that misused the Jade Mark.
>
> Upon information and belief, Defendants Marshall and
> Harris have profited from the acts of infringement by
> third parties by performing at the "90's Kickback
> concert" events and receiving payment therefor.[46]

Regarding vicarious infringement Plaintiff alleges that

> Defendants have the right and ability to control the
> content and appearance of advertising and promotional
> materials published and distributed on their behalf by
> third-party agents or promoters, including Defendants
> Williams and Yung Fly, in connection with the sale,
> offering for sale, distribution, or advertising of
> Defendants Marshall and Harris's services in interstate
> commerce.
>
> The use of the JADE Mark by Defendants Marshall and
> Harris' third-party agents, including Williams and Yung
> Fly, as described herein, [h]as caused confusion among

---

[46]Plaintiff's Original Complaint, Docket Entry No. 1, p. 13
¶¶ 72-73.

consumers, and constitutes infringement of Plaintiff's
JADE Mark.

Defendants Marshall and Harris receive a direct
financial benefit from the unauthorized use of the JADE
Mark by such third parties.

Defendants Marshall and Harris are therefore
vicariously liable for the infringing use of the JADE
Mark by their third-party agents, including Defendants
Williams and Yung Fly.[47]

Defendants argue that Marshall and Harris cannot be held

liable for contributory or vicarious infringement because it is

undisputed that they are equal co-owners of the mark.[48] Reasserting

that Holloway had Marshall's and Harris' consent to perform with

them under the mark, Defendants argue that Plaintiff is unable to

establish direct infringement needed support claims for

contributory or vicarious infringement.[49]

A party contributorily infringes on a trademark if it

"'intentionally induces another to infringe a trademark, or if it

continues to supply its product to one whom it knows or has reason

to know is engaging in trademark infringement.'" Rolex Watch USA,

Inc. v. Meece, 158 F.3d 816, 828 (5th Cir. 1998), cert. denied, 119

S. Ct. 1808 (1999) (quoting Inwood Laboratories, Inc. v. Ives

Laboratories, Inc., 102 S. Ct. 2182, 2188 (1982)).   See also

---

[47]Id. at 14-15 ¶¶ 80-83.

[48]Amended Memorandum in Support of Defendants' MSJ, Docket
Entry No. 49, pp. 2 ¶¶ 7-8, and 11-12 ¶ 74.

[49]See also Defendant's Reply, Docket Entry No. 54, pp. 3 ¶¶ 7-
8, and 17-19 ¶¶ 53-58.

Phoenix Entertainment Partners LLC v. Boyte, 247 F. Supp. 3d 791, 797 (S.D. Tex. March 28, 2017) ("Contributory infringement is 'intentionally causing or knowingly facilitating the infringement of the plaintiff's mark by a third party.'"). Courts in the Fifth Circuit, including this one, have extended the holding from Inwood cited by the Fifth Circuit in Meece to service providers. See Malletier v. Texas International Partnership, No. 4:10-cv-02821, 2011 WL 13253847, at * 4 (S.D. Tex. November 18, 2011)(Miller, J.). "Vicarious liability for trademark infringement requires 'a finding that the defendant and the infringer have an apparent or actual partnership, have authority to bind one another in transactions with third parties or exercise joint ownership or control over the infringing product.'" Boyte, 247 F. Supp. 3d at 797 (quoting Hard Rock Café Licensing Corp. v. Concession Services, Inc., 955 F.2d 1143, 1150 (7th Cir. 1992)).

Thus, to prevail on her claims for either contributory or vicarious infringement asserted against Marshall and Harris, Plaintiff must establish underlying infringement. See Boyte, 247 F. Supp. 3d at 797 (regarding contributory infringement); and Playboy Enterprises, Inc. v. Webbworld, Inc., 991 F.Supp. 543, 557 (N.D. Tex. 1997), aff'd, 168 F.3d 486 (5th Cir. 1999) (regarding vicarious infringement). Here, however, Plaintiff has failed to establish underlying infringement because for the reasons stated above in § III.C.1, the court has concluded that third parties such as Holloway, Williams, and Yung Fly, who use a mark pursuant to

-32-

consent from a co-owner of the mark, cannot be held liable for infringement by another co-owner of the mark. Defendants are therefore entitled to judgment as a matter of law on the claims of contributory and vicarious infringement that Plaintiff has asserted against Marshall and Harris because Plaintiff has failed to offer any evidence capable of establishing infringement for which Marshall or Harris could be contributorily or vicariously liable. Accordingly, Defendants' MSJ will be granted as to Plaintiff's claims for contributory and vicarious infringement.

3. Plaintiff's Unfair Competition Claims Against All Defendants

Plaintiff asserts unfair competition claims against all three Defendants for false designation of origin and false advertising under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Regarding false designation of origin, Plaintiff alleges that

> **Defendants' unauthorized use in commerce of the Infringing Mark** as alleged herein is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendants' services, and is likely to cause consumers to believe, contrary to fact, that Defendants' services are sold, authorized, endorsed, or sponsored by Plaintiff, or that Defendants are in some way affiliated with or sponsored by Plaintiff.

> **Defendants' unauthorized use of Plaintiff's voice and likeness in commerce** as alleged herein is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendants' services, and is likely to cause consumers to believe, contrary to fact, that Defendants' services are sold, authorized, endorsed, or sponsored by Plaintiff, or that Defendants are in some way affiliated or sponsored by Plaintiff.

-33-

**Defendants' unauthorized use in commerce of the infringing Mark as alleged herein constitutes a false designation of origin and misleading description and representation of fact.** Specifically, by advertising and promoting services in commerce provided by Defendant Holloway under a mark identical to that of Plaintiff's JADE Mark, Defendants are misrepresenting that the services originate from Plaintiff.

. . .

Defendants' conduct as alleged herein constitutes unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).[50]

Regarding false advertising, Plaintiff alleges that

**Defendants' unauthorized use of Plaintiff's JADE Mark .** . . in conjunction with the promotion and provision of live entertainment services constitutes unfair competition and false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

Defendants' false statements, misrepresentations, and omissions concerning the nature of the services rendered under a mark identical to Plaintiff's JADE Mark, including that Defendant Holloway is a member of the group Jade, that the performances promoted and provided by Defendants are those of the group Jade, and the failure to correct the implication in the minds of consumers purchasing tickets to see Plaintiff perform, are material in that the false statements, misrepresentations, and omissions are likely to influence the purchasing decisions of consumers.

. . .

Defendants' violated the Lanham Act by placing in interstate commerce the false and/or misleading statements throughout various advertising and promotional materials.[51]

---

[50]Plaintiff's Original Complaint, Docket Entry No. 1, pp. 10-11 ¶¶ 50-54 (emphasis added).

[51]Id. at 11-12 ¶¶ 58-59, and 62 (emphasis added).

(a)   Applicable Law

In pertinent part, § 43(a) of the Lanham Act states that

[a]ny person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).  This section thus "creates two distinct bases of liability: false association, § 1125(a)(1)(A), and false advertising, § 1125(a)(1)(B)."  Lexmark, 134 S. Ct. at 1384.

In Lexmark the Supreme Court observed that § 1125 of the Lanham Act is meant to protect businesses from "injuries to business reputation and present and future sales."  Id. at 1390. The Court held that "to come within the zone of interests in a suit for false advertising under § 1125(a), a plaintiff must allege an injury to a commercial interest in reputation or sales."  Id.  In order to satisfy the proximate cause requirement of the Lanham Act, a plaintiff "must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that occurs when deception of consumers causes them to withhold

-35-

trade from the plaintiff." Id. at 1391.   The Court thus held that "[t]o invoke the Lanham Act's cause of action for false advertising, a plaintiff must plead (and ultimately prove) an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations." Id. at 1395.  Plaintiff acknowledges that "court[s] apply a zone-of-interest test[] to determine whether a statutory cause of action encompasses a plaintiff's claim,"[52] but fails either to argue or to show that she has suffered an injury to a commercial interest in sales or business reputation proximately caused by the Defendants' misrepresentations.


(b)  Application of the Law to the Undisputed Facts

Plaintiff's unfair competition claims for false designation of origin and false advertising are premised on the contention that Defendants' use of the Mark without her authorization misrepresents that their services originate with her, are affiliated with or sponsored by her, or include her.  But missing from Plaintiff's Original Complaint and briefing are allegations, argument, or evidence showing that Defendants' use of the Mark in commerce proximately caused Plaintiff to suffer injuries to commercial interests in business reputation or sales.

---

[52]Plaintiff's Response to Defendants' MSJ, Docket Entry No. 51, p. 14 ¶ 14 (citing Bank of America Corp. v. City of Miami, Florida, 137 S. Ct. 1296, 1302 (2017)(analyzing Fair Housing Act claims, not Lanham Act claims)).

Plaintiff's Original Complaint merely alleges that
"Defendants' conduct . . . is causing immediate and irreparable
harm and injury to Plaintiff, and to her good will and reputation,
and will continue to both damage Plaintiff and confuse the public
unless enjoined,"[53] and that "[a]s a direct and proximate result of
Defendants' false statements, misrepresentations, and omissions in
their misleading advertising and promotions, Plaintiff has
suffered, is suffering, and will continue to suffer damages."[54]  In
support of these allegations Plaintiff argues that

> [i]n 2021, Defendants Marshall and Harris fractured the
> single-source identifying value of the Jade Group, the
> JADE Mark, and the '227 Registration.  They hired
> Defendant Holloway to replace Reed without informing her
> or the Jade Group's fans.  All three of Defendants then
> promoted, advertised, and attended performances without
> Ms. Reed under the JADE Mark and '227 Registration.  As
> a result, consumers were understandably confused,
> believing (a) Ms. Reed is no longer a member of the Jade
> Group, and/or (b) Holloway is a member of the Jade Group.
> It is undisputed that neither are true.[55]

Plaintiff also argues that "[t]he competent summary judgment
evidence establishes that Defendants undermined the source-
identification function of the JADE Mark in the minds of consumers
intentionally and to the detriment of Ms. Reed."[56]

---

[53]Plaintiff's Original Complaint, Docket Entry No. 1, p. 11
¶ 55.

[54]Id. at 12 ¶ 64.

[55]Plaintiff's Response to Defendants' MSJ, Docket Entry No. 51,
pp. 2-3.

[56]Id. at 3.

But missing from Plaintiff's briefing is a cite to any evidence showing that she markets services bearing the Mark such that its single source identifying value has been fractured or undermined.  To the contrary undisputed evidence shows that the JADE Mark remains associated with a single-source that includes co-owners Marshall and Harris.  Also missing from Plaintiff's briefing is argument or cite to any authority holding that as co-owners of the Mark, Marshall and Harris needed Plaintiff's authorization to use the Mark in commerce.  To the contrary, for the reasons stated above in § III.C.1, the court has already concluded that as co-owners of the Mark, Marshall and Harris hold equal and unfettered rights to use the Mark, and were within their rights as co-owners to hire Holloway to perform with them, and therefore consent to Holloway's use of the Mark.  The court recognizes that joint ownership of a trademark is in tension with the single source function of trademark law, see 2 McCarthy at § 16:40 ("It is fundamental that a trademark . . . identifies a single . . . source."), and could potentially lead to consumer confusion.  But absent any showing that Plaintiff markets services bearing the Mark, Plaintiff is unable to establish a commercial injury to a business reputation or to sales caused by Defendants' alleged unauthorized use of the Mark in commerce.

After searching Plaintiff's Complaint and indulging all possible inferences in Plaintiff's favor, the only assertions of commercial injury the court is able to discern are Plaintiff's

assertions that Defendants performed under the Mark without her and
without her consent at three "90s Kickback Concerts" held in late
2021, and that Defendants denied her an accounting of revenues from
those performances.  But missing from Plaintiff's briefing is any
showing that the Lanham Act precludes Marshall and Harris from
performing under the Mark without her or without her consent, or
that the Lanham Act requires Marshall and Harris to provide her an
accounting for such performances.[57]  Instead, Plaintiff urges the
court to consider this case in the context of a number of
uncontrolling cases that are factually distinguishable from this
case and pre-date Lexmark.[58]

     Plaintiff cites Smith v. Montoro, 648 F.2d 602, 607 (9th Cir.
1981), for recognizing that "[o]n its face [§] 43(a) [of the Lanham
Act] gives standing to sue to 'any person who believes that he is
or is likely to be damaged,'" and for holding that the plaintiff,
who alleged that the defendants substituted his name on motion
picture film credits and advertising materials for that of another
actor, had standing to sue under § 43(a).[59]  Id. at 608.  Smith is

---

[57]Plaintiff's claim for an accounting is not based on the
Lanham Act but, instead, on state law.  See Id. at 24-25 ¶ 53
("Plaintiff pled a demand for accounting under state law against
Defendants Marshall and Harris as Count XI.").  See also
Plaintiff's Original Complaint, Docket Entry No. 1, p. 19 ¶¶ 118-
25.

[58]Plaintiff's Response to Defendants' MSJ, Docket Entry No. 51,
pp. 27-30 ¶¶ 59-64.

[59]Id. at 27-28 ¶ 59.

distinguishable because although Plaintiff alleges that Defendants used her likeness and voice without her consent for the "90's Kickback Concerts," Plaintiff has failed to cite any evidence capable of establishing that Defendants, in fact, used her likeness or voice in advertising materials, or that if they did, Defendants credited Holloway instead of Plaintiff for any of Plaintiff's performances or recordings.

Plaintiff cites <u>LaMothe v. Atlantic Recording Corp.</u>, 847 F.2d 1403, 1405-08 (9th Cir. 1988), for recognizing that § 43(a) is equally applicable to musicians and composers, and holding that plaintiffs had standing to sue their co-authors under § 43(a) for omitting their names from an album cover and sheet music that featured their co-authored compositions.[60] <u>LaMothe</u> is distinguishable because although Plaintiff alleges that Defendants used her likeness and voice without her consent for the "90's Kickback Concerts," Plaintiff has failed to cite any evidence capable of establishing that Defendants, in fact, used her likeness or voice in advertising materials, or that if they did, they failed to credit or properly identify Plaintiff.

Plaintiff cites <u>Kingsmen v. K-Tel International, Ltd.</u>, 557 F. Supp. 178 (S.D.N.Y. 1983), for holding that § 43(a) is an appropriate vehicle to prevent consumer confusion about members' participation, or lack thereof, in musical groups. Plaintiff argues that

---

[60] <u>Id.</u> at 28-29 ¶ 60.

> [i]n Kingsmen, Jack Ely, one of the original members of
> the recording group The Kingsmen, recorded vocals on the
> song "Louie, Louie." Shortly after recording the record,
> but before it became the second best selling record in
> the U.S. in 1964, Ely left the group. The group
> disbanded in 1967. Nearly a decade later, No member of
> the group has performed as "The Kingsmen," but Ely and
> another original member, Lynn Easton, re-recorded "Louie,
> Louie" on their own, without the participation of any
> other member of the band, and released the re-recording
> under the name "The Kingsmen." The other members sued
> under [§] 43(a) for unfair competition. Finding in favor
> of a preliminary injunction against the record and
> production companies licensed by Ely and Easton, the
> court established (1) that [§] 43(a) is intended to
> prevent deception as to the origin of a product; (2) that
> the new recording competed directly with prior recordings
> of "Louie, Louie"; and that plaintiffs had standing to
> sue under the Lanham Act.[61]

Kingsmen is distinguishable because unlike the plaintiffs in that case who alleged that the defendants' new recording under the name "The Kingsmen" competed with the plaintiffs' old recording under the same name and threatened to harm them economically by depriving them sales of their old recording, Plaintiff has failed to allege, argue, or cite evidence capable of showing that Defendants' performance under the JADE Mark competes with Plaintiff or threatens to harm Plaintiff economically by depriving her of sales.

Plaintiff cites Grondin v. Rossington, 690 F.Supp. 200 (S.D.N.Y. 1988), as a case in which "[t]he plaintiff's allegations were nearly identical to [hers]."[62] Plaintiff argues that

---

[61] Id. at 29 ¶ 61.

[62] Id. at 30 § 62.

> [i]n <u>Grondin</u>, the estate of Ronnie Van Zant brought suit under [§] 43(a) to prevent the use of the band name "Lynard Skynyrd" [sic] by bandmates of Van Zant and original founding members of the band Lynard Skynyrd [sic]. . . The plaintiff[s alleged] . . . that "by holding themselves out to be Lynard Skynyrd [sic], the defendants will deceive the concert going public into believing that they are buying tickets for the group that achieved popularity a decade ago, even though the band's lead singer and main attraction is dead." Importantly the court [found] that the plaintiff's "claim against use of the name Lynard Skynyrd [sic] is properly brought pursuant to the Lanham Act," where **four of the original band members were named defendants in the lawsuit.**[63]

<u>Grondin</u> is distinguishable because unlike the rights to the JADE Mark, which are held by Plaintiff, Marshall, and Harris, all rights to the Lynyrd Skynyrd trade name, trade marks or service marks were held by a corporation known as Lynyrd Skynyrd Productions, Inc. <u>Id.</u> at 202.

Because Plaintiff's Original Complaint and briefing lack allegations, argument, or evidence showing that Defendants' use of the Mark in commerce proximately caused Plaintiff to suffer injuries to commercial interests in business reputation or sales, and because undisputed evidence establishes that Defendants' use of the JADE Mark in commerce was authorized, the court concludes that Defendants are entitled to summary judgment on Plaintiff's claims for unfair competition. Accordingly, Defendants' MSJ will be granted as to Plaintiff's claims for unfair competition.

---

[63]<u>Id.</u> (emphasis in the original).

4.   <u>Plaintiff's Dilution Claim Against Holloway</u>

Plaintiff asserts a dilution claim under § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c) against Holloway, but not against Marshall and Harris.  Plaintiff alleges that her "JADE Mark is distinctive and a 'famous mark' within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c),"[64] that the "JADE Mark became distinctive and famous prior to the acts of Defendant[] . . . Holloway,"[65] and that "Holloway's acts . . . have diluted and will, unless enjoined, continue to dilute and are likely to dilute the distinctive quality of Plaintiff's famous JADE Mark."[66]

Section 43(c) of the Lanham Act, also known as the Federal Trademark Dilution Act ("FDTA"), provides as follows:

> Subject to the principles of equity, the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury.

15 U.S.C. § 1125(c)(1).  "Trademark dilution is the weakening of the ability of a mark to clearly and unmistakably distinguish the source of a product."  <u>Scott Fetzer Co. v. House of Vacuums Inc.</u>, 381 F.3d 477, 489 (5th Cir. 2004).  Dilution may occur in one of

---

[64]Plaintiff's Original Complaint, Docket Entry No. 1, p. 12 ¶ 66.

[65]<u>Id.</u> ¶ 67.

[66]<u>Id.</u> ¶ 68.

two ways: blurring, which involves a diminution in the uniqueness or individuality of a mark because of its use on unrelated goods or services; and tarnishing, which occurs when a trademark is linked to products of shoddy quality, or is portrayed in an unwholesome or unsavory context, with the result that the public will associate the lack of quality or lack of prestige in the defendant's goods with the plaintiff's unrelated goods.  Id.  To establish liability for dilution, Plaintiff must show that (1) she owns a famous and distinctive mark, (2) Holloway has used Plaintiff's mark in a manner that dilutes Plaintiff's mark, (3) the similarity between Holloway's mark and Plaintiff's mark gives rise to an association between the two marks, and (4) the association is likely to impair the distinctiveness of Plaintiff's mark or harm the reputation of Plaintiff's mark.  See National Business Forms & Printing, Inc. v. Ford Motor Co., 671 F.3d 526, 536 (5th Cir. 2012).

In the handful of cases where trademark co-ownership is at issue, courts have held that federal claims for dilution — like claims for infringement — cannot be maintained against co-owners. For example, in Deriminer, 406 F. Supp. 2d at 758, the court held that "an action between co-owners of a trademark for dilution of that mark under 15 U.S.C. § 1125(c) is not permitted.  Like an action for trademark infringement by a co-owner, the claim is best understood as an action for an accounting that arises under state contract law, not under the Lanham Act."  The Derminer court reached its holding by analyzing the plain language of the statute, which the court said

-44-

distinguishes between the mark's owner and the person against whom an action may be brought.  In other words, by the language of the statute, there are two classes of parties: owners of marks, and "another person."  Thus, I believe the language of the statute makes clear that Congress never intended to create a trademark dilution cause of action between owners.  Further underscoring this point, the [Lanham] Act uses the broader designation "any person" in 15 U.S.C. § 1125(a)(1) (not the narrower designation "another person").  It is this broader designation that courts have found is entitled to protect individuals "whether or not they are owners of the mark."

Id.

Plaintiff has met her burden in showing that she holds ownership rights in the mark, but for the reasons stated above in § III.C.1, the court has already concluded that Plaintiff is unable to show that Holloway's performances under the mark were unauthorized because the undisputed evidence shows that the JADE Mark and registration are jointly owned by Plaintiff, Marshall, and Harris, all of whom enjoy equal rights to use the Mark as co-owners, and that Marshall's and Harris' use of the Mark to promote their performances in the "90's Kickback Concerts" with Holloway was within the scope of their rights as co-owners.  Nor has Plaintiff made any showing that Holloway has used the JADE Mark in a manner that dilutes Plaintiff's rights to use the Mark.  The court therefore concludes that Defendants have demonstrated that, even when viewing the evidence in the light most favorable to Plaintiff, Holloway cannot be held liable to Plaintiff for dilution.  Accordingly, Defendants' MSJ will be granted as to Plaintiff's claims for dilution asserted against Holloway.

D.   **State Law Claims**

Plaintiff asserts state law claims for statutory dilution under Texas Business and Commerce Code § 16.103, unfair competition, and misappropriation of right of publicity against all defendants, for trademark infringement against Holloway, and for accounting against Marshall and Harris.[67]   Federal courts are courts of limited jurisdiction.   They adjudicate claims arising from violations of federal law, including the United States Constitution, claims in which diversity of the parties is present, and pendent state law claims over which the court may exercise supplemental jurisdiction.   See 28 U.S.C. § 1367(a) ("Except as [otherwise] provided . . . the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.").   Plaintiff filed this action based on federal question jurisdiction asserting that "[t]his court has jurisdiction over this action pursuant to 15 U.S.C. § 1121, 28 U.S.C. §§ 1331, and 1338(a) and (b), and pursuant to the principles of supplemental jurisdiction under 28 U.S.C. § 1367."[68]   Since the court has decided to dismiss plaintiff's only federal claims, no federal question remains before the court.   Although this fact

---

[67]Id. at 15-19 ¶¶ 87-125.

[68]Id. at 2 ¶ 3.

-46-

alone does not divest the court of jurisdiction, the court must decide whether to exercise supplemental jurisdiction over the remaining state law claims. See 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . (3) the district court has dismissed all claims over which it has original jurisdiction.").

In Carnegie-Mellon University v. Cohill, 108 S. Ct. 614, 619 n.7 (1988), the Supreme Court recognized that

> in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine — judicial economy, convenience, fairness, and comity — will point toward declining to exercise jurisdiction over the remaining state-law claims.

See also United Mine Workers of America v. Gibbs, 86 S. Ct. 1130, 1139 (1966) (recognizing that ordinarily, when the federal claims are dismissed before trial the pendent state claims should be dismissed as well). Moreover, the general rule in the Fifth Circuit is to dismiss state law claims when the federal claims they supplement are dismissed. See Parker & Parsley Petroleum Co. v. Dresser Industries, 972 F.2d 580, 585 (5th Cir. 1992) (citing Wong v. Stripling, 881 F.2d 200, 204 (5th Cir. 1989)). See also Brookshire Brothers Holding, Inc. v. Dayco Products, Inc., 554 F.3d 595, 602 (5th Cir. 2009) ("The general rule is that a court should decline to exercise jurisdiction over remaining state-law claims when all federal law claims are eliminated before trial. . .").

-47-

In Parker & Parsley, 972 F.2d at 580, the Fifth Circuit held that a district court abused its discretion in failing to relinquish jurisdiction over pendent state law claims.  In that case the sole federal claim was dismissed after nine months of trial preparation and one month before the scheduled trial date. The district court retained jurisdiction over state law fraud, contract, and tort claims, and continued the case for three additional months.  Before the dismissal of the federal claim, there had been "'a serious attack upon the propriety of venue,' 'rigorous deposition schedules,' 'ungodly amounts of discovery documents,' and a hearing on discovery disputes." Id. at 584.  In refusing to surrender jurisdiction over the state law claims, the district court had concluded that "'the equities weigh heavily in favor of maintenance of the case,'" and went on to hold a full trial and render judgment on the state law claims.  Id. at 584–85.

"After considering and weighing all the factors present in th[e] case," id. at 590, the Fifth Circuit reversed the district court, finding that the failure to relinquish the state law claims was an abuse of discretion.  Id.  The Fifth Circuit carefully analyzed the Cohill factors, expressly stating that "[n]o single factor . . . is dispositive." Id. at 587.  The court noted a number of facts and circumstances weighing in favor of relinquishing jurisdiction: (i) the case was "only nine months" old; (ii) trial was "still a few weeks away;" (iii) "discovery had

-48-

not been completed;" (iv) "the case was at an earlier stage than the parties and the court previously might have thought" due to an amended complaint that changed the theories of the case; (v) the district judge did not have "substantial familiarity with the merits of the case;" (vi) the remaining state law issues were "difficult ones;" (vii) remaining in federal court did not "prevent[ ] redundancy [or] conserve[ ] substantial judicial resources;" (viii) there would be no "undue inconvenience" such as a "tremendous financial drain" or a necessity for new legal research; (ix) the already completed discovery "was largely usable in the state proceeding;" (x) the parties would not be prejudiced by remand; and (xi) the "important interests of federalism and comity" heavily favored remand.  Id. at 587–89.

Careful examination shows that the circumstances in this case are similar to those in Parker & Parsley.  Although discovery has been completed and motions in limine and other pretrial motions were due on June 9, 2023, neither party has filed any such motions. Moreover, no hearings or trial dates have been scheduled, the court has not yet familiarized itself with any of the state law issues, and no prejudice will be suffered by any party if the court declines to exercise supplemental jurisdiction over the remaining state law claims.  In addition, comity demands that the important interests of federalism and comity be respected by federal courts, which are courts of limited jurisdiction and "not as well equipped

for determinations of state law as are state courts." Id. at 588-89.  See also id. at 585 ("Our general rule is to dismiss state claims when the federal claims to which they are pendent are dismissed.")).  Accordingly, the court concludes that there is no reason to exercise supplemental jurisdiction over the state law claims, and that those claims will be dismissed without prejudice.

## IV.   **Conclusions and Order**

For the reasons stated above in § III.B, Plaintiff's objections to Defendants' summary judgment evidence are **OVERRULED**.

For the reasons stated above in § III.C, the court concludes that Defendants are entitled to summary judgment on the federal law claims that Plaintiff has asserted under the Lanham Act, and that those claims should be dismissed with prejudice.  For the reasons stated above in § III.D, the court declines to exercise supplemental jurisdiction over the claims that Plaintiff has asserted under state law, and that those claims should be dismissed without prejudice.  Accordingly, Defendants Joi Marshall, Tonya Harris, and Myracle Holloway's Motion for Summary Judgment, Docket Entry No. 47, is **GRANTED**.

**SIGNED** at Houston, Texas, this 20th day of October, 2023.

SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE

-50-