United States District Court
Southern District of Texas
**ENTERED**
April 04, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

DI REED,                          §
                                  §
        Plaintiff,                §
                                  §
v.                                §   CIVIL ACTION NO. H-21-3942
                                  §
JOI MARSHALL, TONYA HARRIS        §
P/K/A TONYA KELLY, and            §
MYRACLE HOLLOWAY,                 §
                                  §
        Defendants.               §
                                  §
                                  §
JOI MARSHALL and TONYA HARRIS,    §
                                  §
        Counterclaimants,         §
                                  §
v.                                §
                                  §
DI REED,                          §
                                  §
        Counterclaim-Defendant.   §


## MEMORANDUM OPINION AND ORDER

Plaintiff, Di Reed ("Reed" or "Plaintiff"), brings this action
against Defendants, Joi Marshall ("Marshall"), Tonya Harris p/k/a
Tonya Kelly ("Harris"), and Myracle Holloway ("Holloway") for
infringement of the federally-registered service mark "JADE" (the
"Mark"), unfair competition in the forms of false designation of
origin and false advertising, and dilution in violation of the
Lanham Act, 15 U.S.C. § 1051 et seq., and for related claims based
on the statutory and common law of Texas.  Defendants filed an
Original Answer (Docket Entry No. 22) denying Plaintiff's
allegations, and asserting state law counterclaims against
Plaintiff for tortious interference with prospective business
relations.  On October 20, 2023, the court entered a Memorandum

Opinion and Order (Docket Entry No. 56), granting Defendants' Motion for Summary Judgment on Plaintiff's Lanham Act claims and declining to exercise supplemental jurisdiction over any of the parties' state law claims. The court also entered a Final Judgment (Docket Entry No. 57), dismissing Plaintiff's federal law claims with prejudice and dismissing the parties' state law claims without prejudice. Pending before the court are Defendants' Motion for Attorney's Fees and Costs ("Defendants' Motion for Fees and Costs") (Docket Entry No. 58), Plaintiff's Motion for New Trial ("Plaintiff's MNT") (Docket Entry No. 60), Plaintiff's Motion for Relief from Judgment ("Plaintiff's MRJ") (Docket Entry No. 61), and Plaintiff's Motion for Leave to Supplement the Record ("Plaintiff's Motion to Supplement") (Docket Entry No. 70). Also pending are Plaintiff's Response to Defendants' Motion for Attorney's Fees and Costs (Docket Entry No. 59), Defendants' Response to Plaintiff's Motion for New Trial ("Defendants' Response to Plaintiff's MNT") (Docket Entry No. 65), Defendants' Response to Motion for Relief from Judgment ("Defendants' Response to Plaintiff's MRJ")(Docket Entry No. 66), and Defendants' Response to Plaintiff's Motion for Leave to File Exhibit 27 ("Defendants' Response to Plaintiff's Motion to Supplement") (Docket Entry No. 71). For the reasons stated below, Defendants' Motion for Fees and Costs will be granted in part and denied in part, Plaintiff's Motion for New Trial will be denied, Plaintiff's Motion for Relief from Judgment will be denied, and Plaintiff's Motion to Supplement will be granted.

## I.   <u>Factual and Procedural Background</u>

### A.   **Factual Background**[1]

In 1991 Plaintiff and Defendants Marshall and Harris formed the recording group Jade ("Jade Group"), which had successful single releases in 1993, 1994, and 1995.  In May of 1992 Plaintiff, Marshall, and Harris signed an exclusive recording agreement with Giant Records ("Giant Agreement"), a now-defunct record label.  The Giant Agreement contained specific provisions related to the Jade Group's operations including <u>inter alia</u> that the service mark "JADE" would be held exclusively by the Jade Group, that at no time would more than one member of the Jade Group appear on a non-Jade Group recording, and that no additional members would be added to the Jade Group without Giant's consent.[2]

Beginning in April of 1993 the Jade Group members filed various applications with the United States Patent and Trademark Office ("USPTO").  On September 27, 1994, the USPTO registered the service mark "JADE" as United States Registration No. 1,856,017 in International Class 41 for "entertainment services, namely live

---

[1]Unless otherwise noted, the facts in this section are based upon the facts alleged in Plaintiff's Original Complaint, Docket Entry No. 1, pp. 3-9 ¶¶ 12-43, and in Plaintiff's Response to Defendants' MSJ, Docket Entry No. 51, pp. 14-24 ¶¶ 16-51.  Page numbers for docket entries refer to the pagination inserted at the top of the page by the court's electronic filing system.

[2]<u>See</u> Exhibit 1 to Plaintiff's Response to Defendants' MSJ, Docket Entry No. 51-1, pp. 1, 47 ¶ 24(f) (Sideman Performances), 49-51 ¶ 26 (a)-(c) (Group Provisions).

performances by a musical group" ("'017 Registration").[3]  The '017 Registration was registered to "JADE (Partnership)" care of Lester Kaufman.[4]

In 1995 Harris decided to stop performing with the Jade Group, and the members each pursued individual careers.[5]

Information retained by the USPTO shows that the '017 Registration was cancelled on October 6, 2001,[6] and that the then "current owner(s) information" identified the owner as "JADE," a "California partnership," "composed of Joi Marshall, Deyelle Reed and Tonya Harris, all U.S. citizens."[7]

In 2006, 2009, and 2013 members of the Jade Group corresponded about the possibility of performing together again, but ultimately did not work or perform together.[8]

On October 8, 2013, Marshall and Harris posted a video to YouTube.com titled "Jade — Continuum," which included vintage footage of the Jade Group, including Plaintiff, from the 1990s, and

---

[3]See Exhibit 5 to Plaintiff's Response to Defendants' MSJ, Docket Entry No. 51-5

[4]Id.

[5]Plaintiff's Original Complaint, Docket Entry No. 1, p. 3 ¶ 14.

[6]See Exhibit 6 to Plaintiff's Response to Defendants' MSJ, Docket Entry No. 51-6, p. 5.

[7]See id. at 6.

[8]See Exhibits 7-13 to Plaintiff's Response to Defendants' MSJ, Docket Entry Nos. 51-7 — 51-13.

promotional material for a new recording featuring Holloway under the name "JADE."[9]

Upon learning of the YouTube.com video, Plaintiff hired an attorney who sent Marshall a letter dated December 2, 2013, stating in pertinent part:

> On October 3, 2013, you and Ms. Tonya Harris were issued a request to cease and desist use of the name "JADE" in association with any project for which you and my client, Ms. Di Reed, have not established terms of agreement. As stated, my client shares equal ownership and rights to the JADE name and brand.  Further, your continued unauthorized use of Ms. Reed's name and likeness to promote this project violates my client's Right of Publicity as prescribed in California Civil Code § 3344(a).
>
> . . .
>
> . . . [W]e hereby demand that, until this issue has been resolved, you immediately cease and desist use of the name "JADE' in conjunction with your current project. Further, we demand that you cease and desist use of any image of the original JADE, which features Ms. Reed's likeness, to promote your new, unauthorized project in a public forum, including any and all social media platforms.[10]

On May 29, 2014, Defendants appeared together at the Judge Mablean Ephraim Foundation red carpet where they identified themselves as "Jade."[11]

---

[9]See Exhibit 14 to Plaintiff's Response to Defendants' MSJ, Docket Entry No. 51-14.

[10]Exhibit 15 Plaintiff's Response to Defendants' MSJ, Docket Entry No. 51-15.

[11]Exhibit 16 to Plaintiff's Response to Defendants' MSJ, Docket Entry No. 51-16.

On November 26, 2018, in anticipation of a reunion tour, Plaintiff and Defendants Marshall and Harris filed an application to register the service mark "JADE" with the USPTO.  The application listed Reed, Marshall, and Harris as joint owners of the JADE Mark.  On June 25, 2019, the USPTO approved the application to register the JADE Mark, issuing Service Mark Registration No. 5,787,227 ("'227 Registration") for

> CLASS 41: Entertainment services in the nature of live musical performances; Entertainment services, namely, dance events by a recording artist; Entertainment, namely live performances by a musical band; Entertainment services by a musical artist and producer, namely musical composition for others and production of musical sound recordings.[12]

The first use and first use in commerce is identified as July 1, 1992, and the registrants are identified as Plaintiff, Marshall, and Harris.[13]

Defendants Marshall and Harris entered into a written agreement with Holloway dated June 1, 2021, pursuant to which Holloway would "create/contribute to live performances and promotions . . . as 'work for hire' for a time period of six (6) months starting July 1st, 2021 through December 31st, 2021."[14]

---

[12]"JADE" Trademark Registration, Exhibit A to Plaintiff's Original Complaint, Docket Entry No. 1-1, p. 1.

[13]Id.

[14]Exhibit 18 to Plaintiff's Response to Defendants' MSJ, Docket Entry No. 51-18, p. 1.

After learning that Marshall and Harris had hired Holloway to sing in her place at a "90's Kickback Concert" tour featuring the Jade Group, and that the JADE Mark was being used to promote the concert tour, Plaintiff hired an attorney to send an October 6, 2021, cease and desist letter to Defendants.[15] On November 2, 2021, Plaintiff's attorney sent a follow-up e-mail to Marshall and Harris insisting that they stop using the JADE Mark to promote their concerts.[16]

Plaintiff alleges, and Defendants admit, that Defendants performed as JADE at a "90's Kickback Concert" held in Milwaukee, Wisconsin, on November 20, 2021; Miami, Florida, on November 27, 2021; and Houston, Texas, on December 3, 2021.[17]   Plaintiff also alleges that the Defendants continue to perform under the JADE Mark without accounting to her for any portion of their profits.[18] Defendants admit that they have not accounted to Plaintiff for any profits received.[19]

---

[15]Exhibit C to Plaintiff's Original Complaint, Docket Entry No. 1-3.

[16]Exhibit D to Plaintiff's Original Complaint, Docket Entry No. 1-4.

[17]Plaintiff's Original Complaint, Docket Entry No. 1, p. 6 ¶¶ 26-28; Defendants' Answer and Counterclaim, Docket Entry No. 22, p. 3 ¶¶ 26-28.  See also Flyers for the three concerts, Exhibit 19 to Plaintiff's Response to Defendants' MSJ, Docket Entry No. 51-19, pp. 1-2, and 9 (Miami), 3-5 (Milwaukee), 6-8, and 10 (Houston).

[18]Plaintiff's Original Complaint, Docket Entry No. 1, p. 6 ¶ 29.

[19]Defendants' Answer and Counterclaim, Docket Entry No. 22,
(continued...)

## B.   Procedural Background

Plaintiff filed this action on December 2, 2021, against Defendants Marshall, Harris, Holloway, and promoters of the "90's Kickback Concert," Olasheni Williams ("Williams"), and Yung Fly Entertainment, Inc. ("Yung Fly").[20] Defendants filed their Original Answer and Counterclaim for tortious interference with prospective business relations on January 3, 2022.[21]

On January 24, 2022, Plaintiff filed a motion to dismiss Defendants' Counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6),[22] which the court denied by Memorandum Opinion and Order entered on March 16, 2022 (Docket Entry No. 25).

On April 29, 2022, Defendants filed a motion to dismiss Plaintiff's claims (Docket Entry No. 29), but later withdrew that motion pursuant to a statement of intent to file a motion for summary judgment (Docket Entry No. 33), which the court granted by Order entered on June 2, 2022 (Docket Entry No. 34).

On August 30, 2022, Magistrate Judge Christina A. Bryan conducted a Settlement Conference at which a partial settlement was reached with Defendants Williams and Yung Fly, and on October 11,

---

[19](...continued)
p. 3 ¶ 29.

[20]Plaintiff's Original Complaint, Docket Entry No. 1.

[21]Defendants' Answer and Counterclaim, Docket Entry No. 22.

[22]Plaintiff's Motion to Dismiss Pursuant to Rule 12(b)(6), Docket Entry No. 23.

2022, the court entered an Agreed Dismissal and Permanent Injunction as to those defendants (Docket Entry No. 42).

On February 3, 2023, Plaintiff filed an Agreed Motion for Continuance (Docket Entry No. 43), asking the court to extend the trial setting for an additional 120 days or until June 10, 2023, to allow the parties time to exhaust their on-going settlement negotiations, and to prepare dispositive motions to narrow the issues for trial. On February 6, 2023, the court granted the agreed motion for continuance (Docket Entry No. 44), and entered an Amended Docket Control Order (Docket Entry No. 45), which extended the docket call date to July 14, 2023, the date for filing the Joint Pretrial Order to July 7, 2023, and the date for filing pre-trial motions other than dispositive motions to June 9, 2023. The Amended Docket Control Order did not extend either the date for completion of discovery, which had expired on December 9, 2022, or the date for filing dispositive motions, which remained "thirty (30) days after the mediator or magistrate judge declares an impasse."[23]

On June 19, 2023, Defendants filed a motion to extend time for filing a motion for summary judgment ("Defendants' MSJ") (Docket Entry No. 46), a motion for summary judgment (Docket Entry No. 47), a memorandum in support of their motion for summary judgment

---

[23]Amended Docket Control Order, Docket Entry No. 45, p. 2.

(Docket Entry No. 48), and a first amended memorandum in support of their motion for summary judgment (Docket Entry No. 49).

On June 29, 2023, the court entered an Order (Docket Entry No. 50), that _inter alia_ vacated the deadlines to file the joint pretrial order and for docket call.

On July 10, 2023, Plaintiff responded to Defendants' MSJ by filing Plaintiff's Objections and Response to Defendants' Motion for Summary Judgment on Lack of Subject Matter Jurisdiction ("Plaintiff's Response to Defendants' MSJ") (Docket Entry No. 51).

On July 11, 2023, Plaintiff filed a Motion for Leave to Late File her Response and Objections to Defendants' MSJ (Docket Entry No. 52), which the court granted (Docket Entry No. 53).

On July 16, 2023, Defendants filed a Memorandum in Reply to Opposition to Motion for Summary Judgment ("Defendants' Reply") (Docket Entry No. 54), and on July 17, 2023, Defendants' filed a Second Amended Memorandum in Support of Defendants' Motion for Summary Judgment ("Defendants' Amended Rely")(Docket Entry No. 55).

On October 20, 2023, the court entered a Memorandum Opinion and Order (Docket Entry No. 56), granting Defendants' MSJ as to the federal law claims, declining to exercise supplemental jurisdiction over the parties' state law claims, and a Final Judgment (Docket Entry No. 57), dismissing Plaintiff's federal law claims with prejudice and dismissing the parties' state law claims without prejudice.

-10-

## II. **Plaintiff's Motion to Supplement**

On February 13, 2024, Plaintiff filed a Motion for Leave to Supplement the Record, seeking leave to file Exhibit 27 (Docket Entry No. 70-2), which consists of an email exchange that occurred between counsel for the parties from June 19 to June 22, 2023, a portion of which is attached as Exhibit 1 to Defendants' Response to Plaintiff's MNT (Docket Entry No. 65-2). Plaintiff explains that

> Defendants used this exhibit to state that Plaintiff knew that Defendant[s were] preparing a motion for summary judgment.
>
> However, Defendants' characterization of the email conversation is erroneous and deliberately obscures the whole context. Hence, Plaintiff requests a leave of court to supplement the record with the full email chain. A true and correct email chain is attached hereto as Exhibit 27 and incorporated for all purposes.
>
> The full exhibit paints a different picture in that Counsel for Plaintiff[] was not informed about Defendants' intention to file their "Motion for Summary Judgment" outside of the briefing schedule and that Defendants are not interested in an amicable resolution of this case.[24]

On February 19, 2024, Defendants filed Defendants' Response to Plaintiff's Motion for Leave to File Exhibit 27 (Docket Entry No. 71), opposing Plaintiff's Motion to Supplement. Defendants argue that

> Exhibit 27 just shows how Plaintiff's Counsel did not like the fact that Defendants filed their Motion for

---

[24]Plaintiff's Motion to Supplement, Docket Entry No. 70, pp. 1-2 ¶¶ 3-5. Plaintiff's statement that Defendants' MSJ was filed outside of the briefing schedule is not correct because the deadline for filing dispositive motions remained "thirty (30) days after the mediator or magistrate judge declares an impasse." See id.

Summary Judgment.  The e-mail states that the summary
judgment motion does not allow a conducive environment
for resolution and that it is essentially, inconvenient
for Plaintiff.

The full email does not add anything fruitful to
help decide whether there are any grounds for a relief of
judgment.[25]

Defendants also argue that

[t]he full e-mail is irrelevant to show any mistake or
inadvertence necessitating any relief of judgment; and it
even supports the fact that Plaintiff knew she was
responding to a summary judgment motion.

Additionally, the e-mail chain contains settlement
negotiations and Defendants' settlement negotiations in
this email chain were not consented to becoming part of
the record.

In sum, there is no additional benefit in adding
this email chain as exhibit 27 because it is irrelevant
and Plaintiff had ample opportunity to add [her] exhibits
in November of 2023.[26]

Neither party has cited any authority in support of their

respective positions regarding Plaintiff's Motion to Supplement.

However, Federal Rule of Evidence 106 states in pertinent part that

"[i]f a party introduces all or part of a statement, an adverse

party may require the introduction, at that time, of any other part

— or any other statement — that in fairness ought to be considered

at the same time."  Fed. R. Evid. 106.  As explained by the

Advisory Notes from 1972, Rule 106 "is an expression of the rule of

completeness. . . The rule is based on two considerations.  The

first is the misleading impression created by taking matters out of

---

[25]Defendants' Response to Plaintiff's Motion for Leave to File
Exhibit 27, Docket Entry No. 71, p. 1 ¶¶ 4-5.

[26]Id. at 2 ¶¶ 6-8.

context." Because Plaintiff's motion seeks to supplement the record with the complete email exchange from which Exhibit 1 to Defendants' Response to her MNT is taken, because Defendants have not argued that allowing the record to be supplemented with the complete email exchange will prejudice them, and because Rule 106 allows a party to introduce statements that in fairness should be considered together with statements introduced by an opponent, Plaintiff's Motion for Leave to Supplement will be granted.


### III. **Plaintiff's Motion for New Trial**

Citing Federal Rule of Civil Procedure 59(a)(1)(B), Plaintiff seeks an order setting aside the Final Judgment (Docket Entry No. 57) entered on October 20, 2023.[27]  Plaintiff argues that the court should set aside the Final Judgment because new evidence not available when she filed her response to Defendant's MSJ demonstrates that the harm she sought to prevent is now occurring, and because the court's decision to grant Defendants' MSJ is based on manifest errors of law and fact.[28]  Defendants argue that Plaintiff's MNT should be denied because she "is merely attempting to argue her case again, failing to clearly establish substantial reasons that demonstrate any manifest errors of fact or law and presents cumulative evidence insufficient to grant a new trial."[29]

---

[27]Plaintiff's MNT, Docket Entry No. 60, p. 1.

[28]Id. at 7-8 ¶ 8.

[29]Defendants' Response to Plaintiff's MNT, Docket Entry No. 65, p. 7.

**A.   Standard of Review**

1.   <u>Rule 59(a)(1)(B) Does Not Apply to Plaintiff's MNT</u>

Plaintiff bases her MNT on Federal Rule of Civil Procedure Rule 59(a)(1)(B), which allows a district court to order a new trial "after a nonjury trial." Fed. R. of Civ. P. 59(a)(1)(B). A non-jury trial has not been held in this case. Consequently, Rule 59(a) does not apply to Plaintiff's MNT. <u>See Piazza's Seafood World, LLC v. Odom,</u> 448 F.3d 744, 748 n. 9 (5th Cir. 2006) ("The district court correctly characterized and analyzed the [plaintiff's] Rule 59(a) motion for new trial as a Rule 59(e) motion to reconsider entry of summary judgment."); <u>United States v. $16,540 in U.S. Currency,</u> 273 F.3d 1094, 2001 WL 1085106, at *2 (5th Cir. 2001) (per curiam) ("Because there was no trial, [the petitioner's] motion for a 'new trial' following summary judgment was inappropriate[] . . . the motion should have been construed as a motion for reconsideration pursuant to Rule 59(e).").

2.   <u>Rule 59(e) Provides the Applicable Standard of Review</u>

In this circuit

[a] motion asking the court to reconsider a prior ruling is evaluated either as a motion to "alter or amend a judgment" under Rule 59(e) or as a motion for "relief from a final judgment, order, or proceeding" under Rule 60(b). The rule under which the motion is considered is based on when the motion was filed. . . If the motion was filed within twenty-eight days after the entry of the judgment, the motion is treated as though it was filed under Rule 59, and if it was filed outside of that time, it is analyzed under Rule 60.

<u>Demahy v. Schwarz Pharma, Inc.</u>, 702 F.3d 177, 182 n. 2 (5th Cir. 2012) (per curiam), <u>cert. denied,</u> 134 S. Ct. 57 (2013) (citing <u>Texas A&M Research Foundation v. Magna Transportation, Inc.</u>, 338 F.3d 394, 400 (5th Cir. 2003)).   The Final Judgment from which Plaintiff seeks relief is dated October 20, 2023.   On November 17, 2023, the twenty-eighth day after the court entered Final Judgment (Docket Entry No. 57), Plaintiff filed both her MNT (Docket Entry No. 60), and her MRJ (Docket Entry No. 61).   Because Plaintiff filed the pending motions on the twenty-eighth day after entry of the Final Judgment from which she seeks relief, Rule 59(e) provides the appropriate standard of review.

"A Rule 59(e) motion 'calls into question the correctness of a judgment'" and "is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment."   <u>Templet v. HydroChem, Inc.</u>, 367 F.3d 473, 478-79 (5th Cir.), <u>cert. denied sub nom. Irvin v. Hydrochem, Inc.,</u> 125 S. Ct. 411 (2004).   To prevail on a Rule 59(e) motion, the movant must show either: (1) a manifest error of law or fact; (2) an intervening change in controlling law; or (3) newly discovered evidence.   <u>Id.</u> at 479 (citing <u>Waltman v. International Paper Co.,</u> 875 F.2d 468, 473 (5th Cir. 1989)).   A manifest error of law is an error "that 'is plain and indisputable, and that amounts to a complete disregard of the controlling law.'"   <u>Guy v. Crown Equipment Corp.,</u> 394 F.3d 320, 325 (5th Cir. 2004).   A manifest

error of fact "is an obvious mistake or departure from the truth." Bank One, Texas, N.A. v. Federal Deposit Insurance Corp., 16 F.Supp.2d 698, 713 (N.D. Tex. 1998).  See also Bender Square Partners v. Factory Mutual Insurance Co., No. 4:10-CV-4295, 2012 WL 1952265, at *3 (S.D. Tex. May 30, 2012) ("A manifest error of law or fact must be one 'that is plain and indisputable, and that amounts to a complete disregard of the controlling law or the credible evidence in the record.'") (internal citations omitted)). The Fifth Circuit has held that "an unexcused failure to present evidence available at the time of summary judgment provides a valid basis for denying a subsequent motion for reconsideration." Templet, 367 F.3d at 479 (citing Russ v. International Paper Co., 943 F.2d 589, 593 (5th Cir. 1991)).  Relief under Rule 59(e) is an "extraordinary remedy that should be used sparingly." Id. at 479. Courts considering a motion to set aside a summary judgment are duty-bound to "strike the proper balance between two competing imperatives: (1) finality, and (2) the need to render just decisions on the basis of all the facts." Edward H. Bohlin Co., Inc. v. Banning Co., Inc., 6 F.3d 350, 355 (5th Cir. 1993).  See also Templet, 367 F.3d at 479 (same).


**B.   Analysis**

   1.   Plaintiff Fails to Establish Manifest Error of Law

      Plaintiff argues that the court's application of the Supreme Court's holdings in Lexmark International, Inc.  v. Static Control

-16-

Components, Inc., 134 S. Ct. 1377 (2014), to her Lanham Act claims other than for unfair competition based on false advertising, and the court's analysis of the law with respect to joint ownership of trademarks are manifest errors of law that warrant granting her MNT.[30]  Asserting that "there is no manifest error of law by the Court's finding that joint owners of a trademark cannot sue each other or licensees for infringement [or] unfair competition . . . because relevant case law supports the finding,"[31] Defendants respond that "Plaintiff fails to cite persuasive or controlling authority that is factually like [her] case or on point for any of the controlling issues."[32]

Asserting that "[t]he Court, in its opinion dismissing Plaintiff's [Lanham Act] claims with prejudice, heavily relied on Lexmark[,] . . . stating that Plaintiff failed [the] prudential standing test because she did not allege and did not provide evidence of an injury to a commercial interest in reputation or sales,"[33] Plaintiff argues that "such analysis of Lexmark is reductive and constitutes a manifest error of law as [she] is

---

[30]Plaintiff's MNT, Docket Entry No. 60, pp. 12-16 ¶¶ 19-27 (application of Lexmark), and 20-30 ¶¶ 42-64 (legal analysis of joint ownership of trademarks).

[31]Defendants' Response to Plaintiff's MNT, Docket Entry No. 65, p. 1.

[32]Id.

[33]Plaintiff's MNT, Docket Entry No. 60, pp. 12-13 ¶ 19 (citing Memorandum Opinion and Order, Docket Entry No. 56, p. 36).

undeniably within the zone of interests for the purposes of 15 U.S.C. § 1125(a) and, therefore, has a prudential standing."[34] Defendants argue that the court appropriately applied <u>Lexmark</u> "to show that Plaintiff did not proximately suffer commercial injury from Defendants['] actions, and therefore had **no standing** to use 1125(a)(1)(B) of the Lanham Act for **false advertising**."[35]

The court is not persuaded that its application of <u>Lexmark</u> to the undisputed facts of this case constitutes manifest error of law for the following reasons. The court relied on <u>Lexmark</u> in determining that

> Plaintiff's characterization of Defendants' MSJ as a "mis-styled Rule 12(b)(1) Motion" is misplaced because despite Defendants' reliance on cases in which the court dismissed similar claims for lack of jurisdiction . . . Defendants do not challenge the court's subject matter jurisdiction but, instead, challenge Plaintiff's ability to sue under the Lanham Act.[36]

The court cited <u>Lexmark</u> for observing that "the question this case presents is whether [the claimant] falls within the class of plaintiffs whom Congress has authorized to sue under § 1125(a). In other words, we ask whether [the claimant] has a cause of action under the statute." <u>Lexmark,</u> 134 S. Ct. at 1387. The court also cited <u>Lexmark</u> for noting that

---

[34]<u>Id.</u> at 13 ¶ 20.

[35]Defendants' Response to Plaintiff's MNT, Docket Entry No. 65, p. 10 ¶ 36 (emphasis in the original).

[36]Memorandum Opinion and Order, Docket Entry No. 56, p. 13.

> [w]e have on occasion referred to this inquiry as
> "statutory standing" and treated it as effectively
> jurisdictional. . . That label is an improvement over the
> language of "prudential standing," since it correctly
> places the focus on the statute.  But it, too, is
> misleading, since "'the absence of a valid (as opposed to
> an arguable) cause of action does not implicate subject
> matter jurisdiction, i.e., the court's statutory or
> constitutional power to adjudicate the case.'"

Id. at 1387-88, n. 4.  The court also cited Lexmark for stating

that "a statutory cause of action extends only to plaintiffs whose

interests 'fall within the zone of interests protected by the law

invoked,'" id. at 1388, and that "a statutory cause of action is

limited to plaintiffs whose injuries are proximately caused by

violations of the statute."  Id. at 1390.  Following the Supreme

Court's example in Lexmark, the court analyzed each of Plaintiff's

causes of action to determine whether she could maintain them under

the Lanham Act.  As recognized in Lexmark, this question does not

implicate subject matter jurisdiction.  Id. at 1387-88, n. 4.


        (a)  Infringement Causes of Action

     With respect to Plaintiff's causes of action for infringement

asserted against Holloway and for contributory and vicarious

infringement asserted against Marshall and Harris, the court

concluded that "[a]s a co-registrant of the mark, Plaintiff clearly

comes within the zone of interest implicated by the statute."[37]  The

court's grant of Defendants' MSJ on these Lanham Act claims was

---

[37]See id. at 23.

based on the court's conclusions that Defendants' use of the Jade mark is not unauthorized and, therefore, that the injuries for which Plaintiff seeks relief were not proximately caused by actions that violate the Lanham Act.[38]   In reaching these conclusions the court observed that "[w]hile joint ownership of trademarks is disfavored because it could lead to consumer confusion, it is not prohibited under federal trademark law,"[39] and that "[c]ourts asked to consider the rights of co-owners in trademark cases have uniformly held that federal claims for infringement cannot be maintained against co-owners or their licensees because 'co-owners of trademarks hold "equal and unfettered rights of use."'"[40]   The court found particularly informative two cases on which Defendants relied in support of their motion for summary judgment: <u>Picarri v. GTLO Productions, LLC,</u> 115 F. Supp. 3d 509 (E.D. Pa. 2015); and <u>Derminer v. Kramer,</u> 406 F. Supp. 2d 756 (E.D. Mich. 2005).[41]

---

[38]<u>Id.</u> at 23-29 (infringement); <u>id.</u> at 30-33 (contributory and vicarious infringement).

[39]<u>Id.</u> at 24 (quoting <u>East West Tea Co., LLC v. Puri,</u> No. 3:11-CV-01358-HZ, 2022 WL 900539, at *6 (D. Or. March 28, 2022) (quoting 2 J.T. McCarthy, McCarthy on Trademarks & Unfair Competition ("McCarthy") § 16:40 (5th ed.))).

[40]<u>Id.</u> (quoting <u>Lightfoot v. DeBruine,</u> No. CV-20-00666-PHX-DJH, 2023 WL 2665732, at * 9 (D. Ariz. March 28, 2023) (quoting <u>Picarri v. GTLO Productions, LLC,</u> 115 F. Supp. 3d 509, 513-17 (E.D. Pa. 2015)).   <u>See also</u> McCarthy § 16:40 (5th ed.) ("A co-owner cannot infringe the mark it owns.").

[41]<u>Id.</u> at 24-29.

Because the <u>Picarri</u> and <u>Derminer</u> cases are persuasive, but not controlling authority, Plaintiff argues that "[t]he Court's [a]nalysis of the [l]aw [w]ith [r]espect to [j]oint [o]wnership of [t]rademarks is a [m]anifest [l]egal [e]rror.[42] Since, however, Plaintiff acknowledges that "joint-ownership in trademark law between disputing band members is a difficult issue with **no** precedential authority,"[43] the court's conclusions could rest on an error of law, but do not rest on a manifest error of law, which the Fifth Circuit has defined as an error "that 'is plain and indisputable, and that amounts to a complete disregard of the controlling law.'" <u>Guy,</u> 394 F.3d at 325. Moreover, the arguments that Plaintiff advances with respect to joint ownership of trademarks are arguments that she either raised or could have raised before the entry of judgment and, therefore, do not warrant granting her MNT. <u>See Templet,</u> 367 F.3d at 478-79 ("A Rule 59(e) motion 'calls into question the correctness of a judgment'" and "is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment.") (internal citation omitted).

---

[42]Plaintiff's MNT, Docket Entry No. 60, p. 20.  <u>See also id.</u> at 20-30 ¶¶ 42-64.

[43]<u>Id.</u> at 21 ¶ 43.

(b)   Unfair Competition Causes of Action

With respect to Plaintiff's causes of action for unfair competition asserted against all Defendants, Plaintiff argues that while "the Supreme Court in Lexmark only defined the zone-of-interests test with respect to 'false advertising' under [§ 1125(a)(1)(B)] . . . the Court . . . find[s that] Lexmark control[s] over . . . false designation cases . . . which involve portions of [§ 1125(a)(1)(A)] the Supreme Court . . . never reached."[44]   In other words Plaintiff argues that

> while the express language of [§] 43(a) allows an action by a Plaintiff who "believes . . . she is likely to be damaged," the Court modifies the standard to require Defendants to accomplish the harm she seeks to prevent before she falls within the coverage of the statute.[45]

The court is not persuaded that it's application of Lexmark to Plaintiff's unfair competition claims was a manifest error of law for the following reasons.   The Supreme Court stated in Lexmark that

> . . . [T]his case presents a straightforward question of statutory interpretation: Does the cause of action in § 1125(a) extend to plaintiffs like [Plaintiff]?   The statute authorizes suit by "any person who believes that he or she is likely to be damaged" by a defendant's false advertising.   § 1125(a)(1).   Read literally, that broad language might suggest that an action is available to anyone who can satisfy the minimum requirements of Article III.   No party makes that argument, however, and the "unlikelihood that Congress meant to allow all factually injured plaintiffs to recover persuades us that

---

[44]Id. at 14 ¶ 23.

[45]Id. at 15 ¶ 25.

> [§ 1125(a)] should not get such an expansive reading." .
> . . We reach that conclusion in light of two relevant
> background principles . . . zone of interests and
> proximate causality.

134 S. Ct. at 1388 (internal citations omitted). Although Lexmark
only addressed unfair competition based on false advertising, and
Plaintiff asserts causes of action for unfair competition based on
both false advertising and false designation of origin, Plaintiff
neither cites any authority nor advances any reasoning from which
the court could conclude that the zone of interest or the proximate
cause standards that the Lexmark Court applied to unfair
competition claims based on false advertising differ — or should
differ — from those applied to claims based on false designation of
origin. The court is, therefore, not persuaded that application of
the same analysis to both types of unfair competition constitute
manifest error of law.

Moreover, even if Plaintiff does fall within the zone of
interest for asserting both types of unfair competition claim, the
result would be the same because Plaintiff's Lanham Act claims are
all premised on allegations that Defendants are using the Jade mark
without authorization, and that their unauthorized use of the Jade
mark has caused and is causing Plaintiff to suffer commercial and
reputational injury. But Defendants argued and the court found
that their use of the Jade mark is not unauthorized. Plaintiff
disagrees with this conclusion, but acknowledges that "joint-

-23-

ownership in trademark law between disputing band members is a difficult issue with **no** precedential authority."[46]

Finally, in both the brief filed in opposition to Defendants' MSJ and in her MNT, Plaintiff cites three cases in support of her argument that she is able to maintain Lanham Act claims for unfair competition against the defendants: <u>Smith v. Montoro</u>, 648 F.2d 602 (9th Cir. 1981); <u>LaMothe v. Atlantic Recording Corp.</u>, 847 F.2d 1403 (9th Cir. 1988); and <u>Kingsmen v. K-Tel International, Ltd.</u>, 557 F. Supp. 178 (S.D.N.Y. 1983).[47]   The court addressed each of these cases and, finding them factually distinguishable, concluded that they are inapplicable to the facts of this case.

(c)  Conclusions

Because the court is not persuaded that its application of <u>Lexmark</u> or that its analysis of the law with respect to joint ownership of trademarks constitute manifest errors of law, Plaintiff has failed to establish manifest error of law that warrants granting her MNT.

---

[46]<u>Id.</u> at 21 ¶ 43 (emphasis in original).

[47]<u>See</u> Memorandum Opinion and Order, Docket Entry No. 56, pp. 39-41.

-24-

2.    Plaintiff Fails to Establish Manifest Error of Fact

Asserting that the "Court's opinion consistently held that Plaintiff failed to cite any evidence in support of her claims,"[48] Plaintiff argues that this holding was a manifest error of fact because she presented evidence sufficient to create several fact issues for trial.[49]  Plaintiff also argues that while she

> provided documents and evidence sufficient to meet a jurisdictional rather than a merits-preclusive argument from Defendants, [she] has provided the evidence that the Court suggests is lacking.  Moreover, Defendants never challenged the evidence presented, nor did they attach any other competing evidence to their purported "motion for summary judgment."  Thus, the evidence is uncontroverted.[50]

Plaintiff notes that she

> has filed a Motion for Relief from Order concurrently with this [MNT] on the basis that [her] understanding of Defendants' [MSJ], which was essentially identical in form and substance to its earlier withdrawn Rule 12(b)(6) motion and solely relied upon Piccari and Derminer which were both [Rule] 12(b)(1) cases.  The strange formulation and limited argumentation from Defendants forced Plaintiff to make a choice about whether to supply the Court with jurisdictional (non-merits) arguments or summary judgment (merits) arguments.  Thus, Plaintiff provided limited jurisdictional facts to support [her] Response in Opposition, and is prepared to provide additional documents and evidence if given the opportunity.[51]

Id. n. 14.

---

[48] Plaintiff's MNT, Docket Entry No. 60, p. 16 ¶ 28.

[49] Id. at 19-20 ¶¶ 37-41.

[50] Id. at 17 ¶ 29.

[51] Id. n. 14.

Defendants respond that Plaintiff has failed to establish a manifest error of fact because the facts that she argues the court ignored do not refute their entitlement to judgment as a matter of law, and because Plaintiff could not have been confused about the fact that she was responding to a motion for summary judgment.[52]

      (a)   Plaintiff Had Ample Notice that Defendants' Motion Sought Summary Judgment Based on the Merits

In light of the procedural history of this case related to the filing of dispositive motions, summarized above in §§ I.B and § II, Plaintiff's contention that she did not understand that Defendants sought summary judgment based on the merits of her causes of action, strains credulity.

As detailed above in § I.B, Defendants filed a motion to dismiss Plaintiff's claims (Docket Entry No. 29) on April 29, 2022, but later moved to withdraw that motion pursuant to a statement of intent to file a motion for summary judgment (Docket Entry No. 33). On June 2, 2022, the court entered an Order (Docket Entry No. 34) granting Defendants' motion to withdraw their motion to dismiss. Thus Plaintiff received notice of Defendants' intent to file a motion for summary judgment as early as April 29, 2022, and no later than June 2, 2022, approximately one year before Defendants filed their motion for summary judgment on June 19, 2023.

---

[52]Defendants' Response to Plaintiff's MNT, Docket Entry No. 65, pp. 13-17 ¶¶ 58-79.

On February 3, 2023, Plaintiff filed an Agreed Motion for Continuance (Docket Entry No. 43), asking the court to extend the trial setting to allow the parties time to exhaust their on-going settlement negotiations, and to prepare dispositive motions to narrow the issues for trial.   On February 6, 2023, the court granted the agreed motion for continuance (Docket Entry No. 44), and entered an Amended Docket Control Order (Docket Entry No. 45), which extended the docket call date, the date for filing the Joint Pretrial Order, and the date for filing pre-trial motions other than dispositive motions, but did not extend either the date for completion of discovery, which had already passed on December 9, 2022, or the date for filing dispositive motions, which remained "thirty (30) days after the mediator or magistrate judge declares an impasse."[53]   Plaintiff's February 3, 2023, Agreed Motion for Continuance shows that on that date Plaintiff anticipated that one or more dispositive motions would be filed.

On June 19, 2023, Defendants field a motion for summary judgment (Docket Entry No. 47), a memorandum in support of their motion for summary judgment (Docket Entry No. 48), attached to which are four exhibits constituting evidence outside of the pleadings,[54] and an amended memorandum in support of their MSJ

---

[53]Amended Docket Control Order, Docket Entry No. 45, p. 2.

[54]<u>See</u> Docket Entry Nos. 48-1, 48-2, 48-3, and 48-4.

(Docket Entry No. 49), attached to which were the same four
exhibits.[55]

As discussed in § II, above, counsel for the parties exchanged
emails over the course of three days, June 19-22, 2023, discussing
Defendants' MSJ.[56]

On June 29, 2023, the court entered an Order (Docket Entry
No. 50), vacating the deadlines for filing the joint pre-trial
order and for docket call.

On July 10, 2023, Plaintiff filed a response in opposition to
Defendants' MSJ (Docket Entry No. 51), to which she attached 19
exhibits constituting evidence outside of the pleadings.[57]

On July 16, 2023, Defendants filed an initial reply in support
of their motion for summary judgment (Docket Entry No. 54), and on
July 17, 2023, Defendants filed an amended reply (Docket Entry
No. 55). Although the court did not issue the Final Judgment until
October 20, 2023, Plaintiff neither sought leave to file nor filed
a sur-reply in opposition to Defendants' MSJ.

Since the procedural history of this case shows that Plaintiff
was on notice of Defendants' intent to file a motion for summary
judgment from at least April of 2022, since the title of
Defendants' motion states that it seeks "summary judgment," and

---

[55]See Docket Entry Nos. 49-1, 49-2, 49-3, and 49-4.

[56]See Plaintiff's Exhibit 27, Docket Entry No. 70-2.

[57]See Docket Entry Nos. 51-1 through 51-19.

-28-

since both parties submitted exhibits consisting of matters outside the pleadings in support of and in opposition to Defendants' MSJ, the court concludes that Plaintiff received ample notice that Defendants' motion was, in fact, a motion for summary judgment.

Plaintiff's argument that she did not understand that Defendants' were seeking a merits based judgment because the motion for summary judgment was essentially identical in form and substance to Defendants' earlier Rule 12 motion to dismiss, and because Defendants relied on Piccari, 115 F. Supp. 3d at 509, and Derminer, 406 F. Supp. 2d at 756, is belied by Plaintiff's attachment of 19 exhibits that constitute matters outside of the pleadings to her response in opposition to Defendants' MSJ,[58] by Plaintiff's acknowledgment that the court's acceptance of matters outside the pleadings required the motion to be treated as one for summary judgment,[59] and by the argument made in her MNT that the court's disregard of undisputed facts creating fact issues for trial constitutes a manifest error of fact.[60]   Moreover, the dismissal in Piccari was based on Rule 12(b)(6) — not Rule 12(b)(1), and the issues before the court included the same issue that Defendants raised here, i.e., whether the parties' joint ownership of a trademark precluded the plaintiff from maintaining claims against the defendants under the Lanham Act.  115 F. Supp. 3d at 513.   The dismissal in Derminer was similarly based on

---

[58]Id.

[59]See Plaintiff's MRJ, Docket Entry No. 61, p. 7 ¶ 21.

[60]Plaintiff's MNT, Docket Entry No. 60, pp. 16-20 ¶¶ 28-41.

statutory standing, 406 F. Supp. 2d at 909, which is a merits — not a jurisdictional issue. <u>See Lexmark,</u> 134 S. Ct. at 1387-88 & n. 4.

Plaintiff's argument that she did not understand that Defendants were seeking a merits based judgment is also belied by the acknowledgment in her MRJ that "a motion's substance rather than its linguistic form determines its nature and, thus, its legal effect."[61]  In pertinent part Defendants' MSJ states that

> Defendants pursuant to Fed. R. Civ. P. 56(a) hereby ask[] this Court to grant summary judgment in Defendants' favor and to dismiss Plaintiff's **Counts 1-11** contained in the Original Complaint as the undisputed facts prove that Defendants are entitled to judgment as a matter of law. . .
>
> Plaintiff's claims do not properly arise from the Lanham Act because Marshall and Harris are co-owners of the trademark and there is no Operating Agreement prohibiting their use of the Jade trademark, including hiring Holloway to perform with them when Plaintiff was uncooperative. Defendants also ask[] this Court to dismiss Plaintiff's **Counts 7-11** for lack of subject matter jurisdiction.[62]

Counts 1-6 of Plaintiff's Original Complaint are Plaintiff's Lanham Act claims; Counts 7-11 are Plaintiff's state law claims.[63]  The court is not persuaded that the reasons for which Defendants sought summary judgment as stated in their motion for summary judgment could reasonably have mislead Plaintiff to believe that Defendants were seeking dismissal for lack of subject matter jurisdiction on

---

[61]Plaintiff's MRJ, Docket Entry No. 61, p. 4 ¶ 14.

[62]Defendants' MSJ, Docket Entry No. 47, p. 1.

[63]<u>See</u> Plaintiff's Original Complaint, Docket Entry No. 1, pp. 15-19 ¶¶ 87-125.

her Lanham Act claims because Defendants expressly limited their motion for lack of subject matter jurisdiction to Plaintiff's state law claims.  Moreover, for the reasons stated in § III.B.3, below, the court is not persuaded that the new evidence Plaintiff is prepared to provide would change the outcome.

> (b)  Plaintiff Failed to Submit Evidence Capable of Raising a Fact Issue for Trial

Asserting that she presented undisputed evidence sufficient to create fact issues for trial regarding (1) her commercial and reputational injuries, (2) Defendants' use of her likeness and voice in advertising materials, and (3) Defendants' competition with her for performances under the Jade Mark, Plaintiff argues that the court's disregard of these undisputed facts is a manifest error of fact.[64]  The court is not persuaded that it disregarded any of the facts that Plaintiff alleged or any of the evidence that she submitted in opposition to Defendants' MSJ.  To the contrary, the factual background that the court used to analyze Defendants' MSJ was taken entirely from Plaintiff's Original Complaint, Plaintiff's response in opposition to Defendants' MSJ, and the exhibits attached thereto.[65]  Nor is the court persuaded that the facts Plaintiff contends the court ignored raise fact issues for trial.

---

[64]Plaintiff's MNT, Docket Entry No. 60, pp. 16-20 ¶¶ 28-41.

[65]Memorandum Opinion and Order, Docket Entry No. 56, pp. 3-7. See also id. at 3 n. 3 (stating that "[u]nless otherwise noted, the facts in this section are based upon the facts alleged in Plaintiff's Original Complaint, . . . and in Plaintiff's Response to Defendants' MSJ, . . .").

### (1)  Commercial and Reputational Injury

Asserting that she presented facts sufficient to create a fact issue regarding her commercial and reputational injury, Plaintiff argues that she

> alleged that Defendants' use of JADE confuses the public that Plaintiff authorized, endorsed, or sponsored activities of Defendants under the JADE mark, thereby misrepresenting the source of the goods and damaging her reputation and goodwill in the process.[66]

Citing evidence showing that Defendants perform under the Jade mark, Plaintiff argues that

> such misrepresentation cost Plaintiff opportunities such as the creation of new compositions under JADE name and subsequent profits from new compositions; cost Plaintiff's business reputation in the form of deliberate exclusion from promotional appearances under JADE name; and cost Plaintiff performances under the JADE name.
>
> . . . Holloway cannot be a valid licensee under the trademark law.  The Court accepts Defendants' sanitization of Holloway's presence in advertisements, promotions, and at performances calling her[] a "licensee."  She is not a licensee of Defendants; she is an unauthorized replacement for the core services provided by, and only by, Plaintiff under the JADE Mark. Hence, Defendants' creation and promotion of new goods under JADE name, public appearances under JADE name without Plaintiff, and performances without Plaintiff under JADE name constitute a misrepresentation of the source of the goods.
>
> Through such misrepresentation, Defendants deprive Plaintiff of business she should have participated in as a member of the Jade Group and ruin her reputation by implicitly misrepresenting Plaintiff's departure from the Jade Group and replacement with Defendant Holloway.[67]

---

[66]Plaintiff's MNT, Docket Entry No. 60, p. 17 ¶ 30.

[67]Id. at 17-18 ¶¶ 31-33.

Missing from Plaintiff's MNT is any persuasive argument that the evidence she cites is capable of establishing that the Defendants have violated the Lanham Act.   Plaintiff's Lanham Act claims are all premised on allegations that Defendants are using the Jade mark without authorization, and that their unauthorized use of the Jade mark have caused and is causing Plaintiff to suffer commercial and reputational injury.   But Defendants argued and the court found that their use of the Jade mark is not unauthorized. Plaintiff disagrees with this conclusion, but acknowledges that "joint-ownership in trademark law between disputing band members is a difficult issue with **no** precedential authority."[68]   Plaintiff contends that her joint owners' use of the Jade trademark without her permission violates the Lanham Act.   But Plaintiff has not cited and the court has not found any authority to support this contention.   Review of the case law cited by the parties leads the court to conclude that claims for damages arising from use of a trademark by a co-owner do not exist outside of contract or other state law that would give rise to such claims.   See Leftenant v. Blackmon, No. 2:18-CV-01948-EJY, 2020 WL 13584229, *2 (D. Nev. February 24, 2020) (citing Piccari, 115 F. Supp. 3d at 515-16). See also Derminer v. Kramer, No. 04-CV-74942-DT, 2005 WL 8154857, at * 7 (E.D. Mich. July 14, 2005).   Accordingly, the court concludes that the evidence Plaintiff presented regarding commercial and reputational injury was not sufficient to raise a genuine issue of material fact for trial on her Lanham Act claims.

---

[68]Id. at 21 ¶ 43 (emphasis in original).

### (2) Use of Plaintiff's Likeness and Voice in Advertising Materials

Citing the paragraphs of her Original Complaint asserting claims for federal unfair competition against all Defendants, and Exhibits 14 and 15 attached to her response in opposition to Defendants' MSJ, Plaintiff argues that she "provided evidence that Defendants indeed used her voice and likeness in promotions under the JADE Mark for services to the public, which expressly excluded [her]."[69] Exhibit 14 (Docket Entry No. 51-14) is a video titled "Jade — Continuum" that Defendants posted to YouTube.com in 2013, and Exhibit 15 (Docket Entry No. 51-15) is a December 2, 2013, letter that Plaintiff's counsel sent to Marshall, demanding that Defendants cease and desist from using the Jade name on any project for which Defendants had not established "terms of agreement" with Plaintiff. Asserting that "the first two (2) minutes of [her] Exhibit 14 are rife with uses of [her] voice and her appearances, associating her with the Jade Group and the JADE Mark,"[70] Plaintiff argues that "Defendants did not challenge the evidence or supply the Court with any contradictory evidence of their own demonstrating they had any right to use Plaintiff's voice or likeness in their advertisements."[71] But missing from Plaintiff's MNT is any showing that this evidence creates a fact issue for

---

[69]Id. at 18 ¶ 35.

[70]Id.

[71]Id. at 19 ¶ 36.

trial on her Lanham Act claims for unfair competition.   For the reasons stated above in § III.B.1(b), where the court concluded that

> even if Plaintiff does fall within the zone of interest for asserting both types of unfair competition claim, the result would be the same because Plaintiff's Lanham Act claims are all premised on allegations that Defendants are using the Jade mark without authorization, and that their unauthorized use of the Jade mark has caused and is causing Plaintiff to suffer commercial and reputational injury.  But Defendants argued and the court found that their use of the Jade mark is not unauthorized. Plaintiff disagrees with this conclusion, but acknowledges that "joint-ownership in trademark law between disputing band members is a difficult issue with **no** precedential authority."[72]

Accordingly, the court concludes that while Defendants' use of Plaintiff's voice and likeliness as evidenced by Exhibits 14 and 15 attached to her response in opposition to Defendants' MSJ, could raise fact issues as to her state law claims for misappropriation of right of publicity, that evidence fails to raise fact issues for trial on her Lanham Act claims.

### (3)   Defendants' Performance Under the Jade Mark

Plaintiff argues that she has "alleged, argued, and cited evidence that Defendants, and, in particular, Defendant Holloway, compete with [her] because they are performing shows, recording

---

[72]Id. at 21 ¶ 43 (emphasis in original).

music, and participating in events under the JADE mark without Plaintiff's participation."[73] For example, Plaintiff argues that she

> alleged, argued, and cited evidence that Defendants used [her] voice and likeness to promote their new single with Holloway.  The single was offered for sale at digital retailers under JADE Mark.  Importantly, despite being a joint owner of JADE Mark and a source of the services provided by the Jade Group, Plaintiff had no notice of nor role in selecting Holloway to replace her role in the Jade Group.

> Another example of direct competition alleged, argued, and cited by Plaintiff is a series of '90a's Kickback concerts held in Miami, Milwaukee, and Houston. Again, Plaintiff was expressly excluded from the performances.  In fact, Defendants Marshall and [Harris] led her to believe that she would participate until she saw that her role in the performances and songs of the Jade Group would be replaced with those of Holloway.[74]

Plaintiff argues that

> [t]he Court erred in dismissing [her] claims on the grounds that she failed to demonstrate evidence in support of her claims.  Plaintiff alleged, argued, and cited concrete evidence of Defendants' abuse of the JADE mark and exploiting Plaintiff's voice and likeness to promote their counterfeit performances, all without compensation, attribution, or acknowledgment.[75]

These arguments, like those addressed above in § III.B.2(b)(1), are premised on Plaintiff's contention that her joint owners' use of the Jade trademark without her permission violates the Lanham Act.  But Plaintiff has not cited and the court has not found any authority to support this contention, and review

---

[73]Id. at 19 ¶ 37.

[74]Id. ¶¶ 38-39.

[75]Id. at 20 ¶ 41.

of the case law cited by the parties lead the court to conclude that claims for damages arising from use of a trademark by a co-owner do not exist outside of contract or other state law that would give rise to such claims. See Leftenant, 2020 WL 13584229, at *2 (citing Piccari, 115 F. Supp. 3d at 515-16). See also Derminer, 2005 WL 8154857, at * 7. Thus the court concludes that the evidence of Defendants' performance under the Jade mark that Plaintiff presented in opposition to Defendants' MSJ fails to raise a fact issue for trial on her Lanham Act claims.

(c)  Conclusions

Summary judgment is appropriate where the underlying facts are undisputed, and the record reveals no evidence from which reasonable persons might draw conflicting inferences about the facts. Templet, 367 F.3d at 480. The court based its rulings on Defendants' MSJ on conclusions that Defendants' use of the Jade mark is not unauthorized, that the injuries for which Plaintiff seeks relief were not proximately caused by actions that violate the Lanham Act, and therefore that Plaintiff could not establish essential elements of her Lanham Act causes of action. The court cited Lexmark for the principle that "a statutory cause of action is limited to plaintiffs whose injuries are proximately caused by violations of the statute." 134 S. Ct. at 1390. But as stated in Lexmark, that rule did not originate with Lexmark:

> That venerable principle reflects the reality that "the
> judicial remedy cannot encompass every conceivable harm
> that can be traced to alleged wrongdoing." . . .
> Congress, we assume, is familiar with the common-law rule
> and does not mean to displace it <u>sub silentio.</u>  We have
> thus construed federal causes of action in a variety of
> contexts to incorporate a requirement of proximate
> causation.

<u>Id.</u> (internal citations omitted).  The court also cited <u>Celotex</u>

<u>Corp. v. Catrett</u>, 106 S. Ct. 2548, 2552 (1986), for the rule that

a complete failure of proof concerning an essential element of the

nonmoving party's case necessarily renders all other facts

immaterial.  Federal Rule of Civil Procedure 56 mandates that

summary judgment be entered against a non-movant who fails to set

forth specific facts showing that there is a genuine issue for

trial.  Because the court is not persuaded that the evidence

Plaintiff presented in opposition to Defendants' MSJ created

genuine issues of material fact for trial, the court concludes that

Plaintiff has failed to establish manifest error of fact that

warrants granting her MNT.


### 3. <u>Plaintiff Fails to Cite New Evidence that Warrants Granting Her MNT</u>

Asserting that since the filing of her response to Defendants'

motion for summary judgment, "Defendants, without even attempting

to secure [her] participation, performed and made arrangements to

perform under JADE, further alienating [her] rightful business

interests and damaging her business reputation,"[76] Plaintiff cites promotion material for an R&B Block Party concert to be held at OVO Arena in Wembley, U.K., that was initially scheduled for October of 2023, but was rescheduled for March of 2024.  Plaintiff's new evidence includes the response that the R&B Block Party promoter made on June 23, 2023, to a question posed on Instagram asking if she would be appearing with Jade stating that she and Defendants Marshall and Harris "do not perform as a trio anymore;"[77] an announcement for the R&B Block Party posted on Defendants' "Ladies of Jade" Instagram account on July 16, 2023, stating that "Di Reed, a founding member of Jade, will not appear," but including a video with background audio featuring Plaintiff, Marshall, and Harris singing the Jade song "Every Day of the Week,"[78] and a request that Plaintiff sent to Defendants through counsel on October 6, 2023, "to see if she could join Defendants in the [R&B Block Party] performance," to which Defendants responded, "they'd pass."[79]

In addition, asserting that on or about October 20, 2023, the day the court issued its Memorandum Opinion and Order and Final Judgment, the R&B Block Party promoter rescheduled the event to March of 2024, Plaintiff argues that "[t]hereafter, the tone of

---

[76] Id. at 8-9 ¶ 10.

[77] Id. at 9-10 ¶ 12 (citing Exhibit 22).

[78] Id. at 9 ¶ 11 (citing Exhibit 21).

[79] Id. at 10 ¶ 14 (citing Exhibit 24).

Defendants' advertisements and those of the R&B Block Party promoter changed."[80] Plaintiff explains that

> [o]n November 5, 2023, Defendants posted on the "Ladies of Jade" Instagram account about the rescheduled event. Where the earlier event included additions to the mark "JADE" including "Joi & Tonya of" and "with Special Guest" in nearly illegible font, the new event promotion used the JADE Mark unadulterated. The promotional post featured audio of the Jade Group singing "Don't Walk Away" in the background.[81]

Plaintiff states that comments to the post include: "I can't understand for the life of me why would they move forward like this & ruin Jade legacy. No one is embracing Jade without [Plaintiff]."[82]

Defendants respond that "the new evidence for the [R&B Block Party] concert mirrors the evidence in Plaintiff's Original Petition [relating to the 90's Kickback Concert], making it immaterial and cumulative,"[83] and unlikely to change the outcome.[84] Summarizing the court's conclusions regarding each of Plaintiff's Lanham Act claims, Defendants argue that

> the facts of Marshall and Harris performing as Jade without Reed and hiring Holloway to perform with them at the 90s kickback concerts were not violations of the Lanham Act.

---

[80]Id. at 10-11 ¶ 15 (citing Exhibit 25).

[81]Id. at 11 ¶ 16 (citing Exhibit 26b).

[82]Id. at 12 ¶ 16.

[83]Defendants' Response to Plaintiff's MNT, Docket Entry No. 65, p. 8 ¶ 26.

[84]Id. ¶ 29.

> Thus, the R&B Block party and other facts surrounding the event would not be considered violations of the Lanham Act either.
>
> Additionally, because the Court found Plaintiff failed to argue or show [that] she suffered an injury to a commercial interest in sales or business reputation from Defendants' actions, which was mainly the 90s kickback concerts, she could not satisfy the zone of interest test for false advertising under Lexmark.
>
> The facts surrounding the R&B Block party would not give Plaintiff injury to a commercial interest in sales or business reputation because the comments on the internet from promoters and consumers about [her] not participating in the event were also present in the original complaint regarding the 90s kickback concerts.
>
> Thus, Plaintiff would still fail to have prudential standing for false advertising even if the R&B Block party was a part of the record before the Court issued its Opinion.[85]

When a court is asked to consider evidence that was not part of the summary judgment record, the Fifth Circuit has held that

> a Rule 59(e) motion . . . should not be granted unless: (1) the facts discovered are of such a nature that they would probably change the outcome; (2) the facts alleged are actually newly discovered and could not have been discovered earlier by proper diligence; and (3) the facts are not merely cumulative or impeaching.

Infusion Resources, Inc. v. Minimed, Inc., 351 F.3d 688, 696-97 (5th Cir. 2003), cert. denied, 124 S. Ct. 2881 (2004). See also Ferraro v. Liberty Mutual Fire Insurance Co., 796 F.3d 529, 534 (5th Cir. 2015) (same). The new evidence that Plaintiff argues supports her MNT is promotional material for an R&B Block Party concert initially scheduled for October of 2023 and rescheduled for

---

[85]Id. at 9 ¶¶ 31-35.

March of 2024.  Although most — but not all — of the new evidence
was published after Plaintiff filed her response in opposition to
Defendants' MSJ (Docket Entry No. 51) on July 10, 2023, the only
evidence that could not have been discovered until after the court
issued its Final Judgment on October 20, 2023, is Defendants'
November 5, 2023, post to Instragram announcing that the R&B Block
Party had been rescheduled.  Because the promotional material for
the R&B Block Party is virtually identical to the promotional
material for the 90's Kickback Concert that Plaintiff submitted in
support of her opposition to Defendants' motion for summary
judgment, the new evidence is cumulative of evidence included in
the summary record, and insufficient to change the outcome.
Accordingly, the court concludes that Plaintiff fails to cite new
evidence that warrants granting her MNT.

## IV. **Plaintiff's Motion for Relief from Judgment**

Citing Federal Rule of Civil Procedure 60(b), Plaintiff moves
the court to set aside the Final Judgment (Docket Entry No. 57)
entered on October 20, 2023.[86]    Rule 60(b) allows a district court
to "relieve a party . . . from a final judgment" for any one of six
enumerated reasons:

(1)  mistake, inadvertence, surprise, or excusable
     neglect;

---

[86]Plaintiff's MRJ, Docket Entry No. 61, p. 2 ¶ 3.

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4) the judgment is void;

(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).

Plaintiff argues that the

Court should relieve [her] from its final judgment based on the following grounds:

a. Mistake inadvertence, surprise, or excusable neglect; and

b. Because the interests of justice, in the present unusual case which is a matter of first impression in this Circuit, necessitates further briefing on Plaintiff's claims.[87]

Plaintiff explains that she seeks relief from the court's October 20, 2023, Memorandum Opinion and Order and Final Judgment because

(1) Defendants' Motion was presented, in substance, as a Rule 12(b)(1) or Rule 12(b)(6) Motion to Dismiss;

(2) Plaintiff had no notice that Defendants' Motion was converted to a motion for summary judgment; and

(3) Plaintiff was not heard on her meritorious claims.[88]

---

[87] Id. at 2.

[88] Id. at 2-3 ¶ 6.

For the reasons stated above in § III.A.2, the court has already concluded that because Plaintiff filed the pending MRJ on the 28th day following entry of the Final Judgment from which she seeks relief, that Rule 59(e) — not Rule 60(b) — provides the appropriate basis for Plaintiff's request for relief from Final Judgment.   Alternatively, for the reasons stated above in § III.B.2(a), the court concludes that Plaintiff has failed to show that she is entitled to relief for the reasons argued in her MRJ. Accordingly, Plaintiff's MRJ will be denied.

## V. **Defendants' Motion for Attorneys' Fees and Costs**

Citing Federal Rule of Civil Procedure 54(d)(2), Local Rule 54.3, and 35 U.S.C. § 285, Defendants seek an order granting them attorney fees and costs.[89]   Defendants explain that they are seeking "an award of reasonable attorney's fees because [they] are the prevailing party, and [they] believe that Plaintiff was using the lawsuit to interfere with [their] business relations, rather than bring a new question of law."[90]   Asserting that 15 U.S.C. § 1117(a) allows prevailing parties to recover attorneys fees in exceptional cases, and citing inter alia Baker v. DeShong, 821 F.3d 620 (5th Cir. 2016), Defendants argue that they are entitled to attorneys' fees and costs, because they are the prevailing parties and this

---

[89]Defendants' Motion for Attorney's Fees and Costs, Docket Entry No. 58, p. 1.

[90]Id. at 1-2 ¶ 5.

case is exceptional.[91]   Defendants seek $20,500.00 in reasonable attorneys' fees,[92] and $220.00 in costs.[93]

Plaintiff responds that Defendants's motion for attorneys' fees should be denied because this suit is not exceptional under 15 U.S.C. § 1117(a), and because 35 U.S.C. ¶ 285 is inapplicable.[94] Plaintiff has not addressed Defendants' request for costs totaling $220.00.

### A.   Standard of Review

The Lanham Act states in pertinent part that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a).   In <u>Octane Fitness, LLC v. ICON Health & Fitness, Inc.,</u> 134 S. Ct. 1749, 1756 (2014), the Supreme Court held that an "exceptional" case meriting fees under the Patent Act does not require a prevailing party to demonstrate bad faith.   Instead, the Court stated that a party seeking fees under the Patent Act must demonstrate that the case "stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was

---

[91] <u>Id.</u> at 2-8 ¶¶ 6-49.

[92] <u>Id.</u> at 8 ¶ 47.

[93] Bill of Costs, Docket Entry No. 58-4.

[94] Plaintiff's Response to Defendants' Motion for Attorneys' Fees and Costs, Docket Entry No. 59.

-45-

litigated." <u>Id.</u>   The Court added that "[d]istrict courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." <u>Id.</u>   Recognizing that the Lanham Act's fee-shifting provision is identical to the Patent Act's fee-shifting provision, the Fifth Circuit has extended the standard for exceptional cases established in <u>Octane Fitness</u> to claims for fees brought under the Lanham Act. <u>See Baker,</u> 821 F.3d at 622-25. <u>See also Alliance for Good Government v. Coalition for Better Government,</u> 919 F.3d 291, 295 (5th Cir. 2019) (acknowledging that in <u>Baker</u> the Fifth Circuit extended the Supreme Court's holding in <u>Octane Fitness</u> to claims for attorneys' fees brought under the Lanham Act).

**B.  Analysis**

Without disputing that Defendants are prevailing parties, and asserting that "[t]he Fifth Circuit has not decided a trademark joint-ownership dispute,"[95] Plaintiff argues that this suit "does not and cannot be classified as an 'exceptional' case under 15 U.S.C. § 1117(a), and the attendant authority, warranting an award of attorney's fees to the Defendants."[96] Citing <u>inter alia Alliance for Good Government,</u> 919 F.3d at 295, for recognizing that "an

---

[95] <u>Id.</u> at 2 ¶ 2.

[96] <u>Id.</u> ¶ 3.

award of attorneys' fees 'may be warranted either where the prevailing party stood out in terms of the strength of its litigating position or where the non-prevailing party litigated the case in an "unreasonable manner,"'"[97] Plaintiff argues that Defendants have failed to "indicate[] any unreasonable culpability on behalf of Plaintiff or manner of litigating the case."[98] Asserting that "[t]he governing law is far from black-letter,"[99] and that Defendants "lack of a factual basis that Plaintiff prosecuted [her] claims in any wrongful, bad-faith, or unreasonable manner,"[100] Plaintiff argues that "in the face of a novel legal issue requiring the Court to guess at how an appeals court would rule, . . . [her] challenge [is] at least as strong as Defendants'"[101] and, therefore, that Defendants' motion for attorneys' fees should be denied.[102]

Because it is undisputed that the issues presented in this case are matters of first impression, the court is not persuaded that this case "stands out from others with respect to the substantive strength of [Defendants'] litigating position (considering both the governing law and the facts of the case)." Moreover, despite asserting that Plaintiff brought this lawsuit "to

---

[97]Id. at 3 ¶ 12.

[98]Id. at 4 ¶ 14.

[99]Id. ¶ 15.

[100]Id. ¶ 16.

[101]Id. at 4-5 ¶ 16.

[102]Id. at 5 ¶ 16.

hinder the other co-owners from opportunities to move on without her interference and extract money to which she was not entitled,"[103] that "[i]nstead of aiming to protect the Brand Jade and its opportunities, she sought to destroy anyone who did not ask for her permission,"[104] and that "Plaintiff used this litigation as a form of control and thus, created an 'exceptional case,'"[105] Defendants have failed to make any showing that Plaintiff litigated this action in an unreasonable manner.  This case raises trademark issues of first impression.  Given the lack of controlling authority for issues arising from joint ownership of a trademark, and Defendants' failure to show that Plaintiff litigated this action in an unreasonable manner, the court concludes that this case is not "exceptional" under 15 U.S.C. § 1117(a).  See Tobinick v. Novella, 884 F.3d 1110, 1119 (11th Cir. 2018) ("A case will not qualify as exceptional under the Lanham Act merely because one side has zealously pursued or defended its claim, especially on an issue with no directly controlling precedent.").  Accordingly, Defendants' motion for attorneys' fees will be denied.

Because Plaintiff has not offered any argument in opposition to Defendants' request for $220.00 in costs, Defendant's motion for costs will be granted.

---

[103]Defendants' Motion for Attorney's Fees and Costs, Docket Entry No. 58, p. 7 ¶ 42.

[104]Id. ¶ 44.

[105]Id. ¶ 45.

## VI. <u>Conclusions and Order</u>

For the reasons stated above in § II, Plaintiff's Motion for Leave to Supplement the Record, Docket Entry No. 70, is **GRANTED**.

For the reasons stated above in § III, Plaintiff's Motion for New Trial, Docket Entry No. 60, is **DENIED**.

For the reasons stated above in § IV, Plaintiff's Motion for Relief from Judgment, Docket Entry No. 61, is **DENIED**.

For the reasons stated above in § V, Defendants' request for attorneys' fees in the amount of $20,500.00 is **DENIED**, and Defendants' request for costs in the amount of $220.00 is **GRANTED**. Accordingly, Defendants' Motion for Attorney's Fees and Costs, Docket Entry No. 58, is **GRANTED IN PART** and **DENIED IN PART**.

**SIGNED** at Houston, Texas, this 4th day of April, 2024.

_____
SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE